184 N.J. Super. 253 (1982)
445 A.2d 1159
KEARNY GENERATING SYSTEM, DIVISION OF PUBLIC SERVICE, RESPONDENT-APPELLANT,
v.
RICHARD ROPER AND NEW JERSEY DIVISION ON CIVIL RIGHTS, COMPLAINANT-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 16, 1982.
Decided March 16, 1982.
*255 Before Judges BISCHOFF, KING and POLOW.
Patrick J. McCarthy argued the cause for appellant (Rosen, Gelman & Weiss, attorneys; Howard T. Rosen of counsel; Robert Crane on the brief).
Kenneth H. Williams argued the cause for respondent Richard Roper (Owens, Banks & Williams, attorneys; Kenneth H. Williams of counsel and on the brief).
Joseph M. Gorrell, Deputy Attorney General, argued the cause for respondent Division on Civil Rights (Irwin I. Kimmelman, Attorney General of New Jersey, attorney; James R. Zazzali, former Attorney General of New Jersey; Andrea M. Silkowitz, Deputy Attorney General, of counsel; Joseph M. Gorrell on the brief).
The opinion of the court was delivered by BISCHOFF, P.J.A.D.
Defendant Kearny Generating System, Division of Public Service, (Kearny) appeals from a final determination of the Director of the Division on Civil Rights finding that Kearny violated N.J.S.A. 10:5-4 and N.J.S.A. 10:5-12 a in that it discriminated against plaintiff Richard Roper on the basis of race.
On September 7, 1973 plaintiff applied for a position as utility man with Public Service Electric and Gas Co. (PSE&G). After taking a test at the personnel department of PSE&G, plaintiff was sent to the Kearny plant to be interviewed by Kurt Steckley, the master mechanic. At the Kearny plant Steckley reviewed *256 plaintiff's application, gave him a tour of the plant and spoke to him about the facilities, the work and the benefits provided by the employer. Steckley advised plaintiff that he had other applications to go over and that he would call plaintiff to let him know. On or before September 24, 1973 Steckley called plaintiff and asked him to come in to arrange for a physical. On September 24 plaintiff went to Kearny to pick up some papers and at that time he was directed to the Newark office of PSE&G where he had a physical examination and had his picture taken. Several days later Steckley called plaintiff and advised him that he was not being offered the position. On October 11, 1973 plaintiff, a black, filed a complaint with the New Jersey Division on Civil Rights alleging that on or about October 5, 1973 he was unlawfully denied the position of utility man because of his race.
Two aspects of Kearny's hiring practices are pertinent to this appeal.
(1) At the time of plaintiff's application Kearny had an Affirmative Action Program in effect, the goal of which was to increase the percentage of minority employees to equal the percentage of minority population in the county in which the plant was located. The program was in compliance with federal guidelines compiled by the General Service Administration. In 1973 the number of minority persons employed in the service category exceeded the goal set for that year and equaled 95% of the goal set for 1976. In fact, the percentage of minority persons employed in that category approximated the percentage minority population in Hudson County.
(2) The terms of the collective bargaining agreement with the union required Kearny, in its hiring practices, to conform to a six-month posting procedure. Kearny was permitted to hire "off the street" only during certain periods when the posting procedures had not resulted in filling the positions by promotions from within. The permissible period for off-street hiring terminated in this instance on October 1, 1973.
*257 In the August-September period during which plaintiff made his application, seven positions as utility man were available to be filled by applicants "off the street." By September 7, the date of plaintiff's application, four of these positions had already been filled by Caucasian males. On September 4, one of the white males resigned, increasing the number of openings remaining to be filled to four. These positions were filled by three minority persons and one male Caucasian.
While plaintiff filed his complaint with the Division on Civil Rights on October 11, it was not until August 25, 1977 (a period of three years, ten months!!) that the Director made a probable cause finding that plaintiff was individually discriminated against by Kearny in failing to hire him because he is black. It took over a year thereafter to complete the hearings, and after more than another year's delay the hearing examiner, on December 31, 1979, issued his recommended findings of fact and conclusions of law in which he found that plaintiff had been a victim of unlawful discrimination and held he was entitled to employment at Kearny with seniority rights, back pay in the amount of $113,988.05, less earnings during the period, together with interest at the rate of 8% a year on the net amount owed. After other proceedings not here relevant, the Director of the Division rendered his decision adopting the hearing examiner's recommended findings of fact and determination, with the exception of the recommended method of calculating interest on the back pay award.
Kearny appeals. It is conceded by all parties that the standards to be applied in ruling on a challenge to employment practices on the basis of discrimination are those set forth in the case of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), where the court said:
The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. [Id. at 802, 93 S.Ct. at 1824.]
*258 This principle has been adopted in New Jersey. Peper v. Princeton Univ. Trustee Board, 77 N.J. 55, 84 (1978).
It is undisputed that plaintiff has established steps (i), (ii) and (iii). The controversy revolves around step (iv) in determining whether plaintiff established a prima facie case. On the basis of vague testimony delivered by plaintiff in 1978, the hearing examiner found as a fact that plaintiff was rejected on or before September 28, 1973. In doing so, the hearing examiner totally ignored the fact that plaintiff had filed a complaint on October 11, 1973, in which he said he had been rejected on October 5, 1973.
Defendant produced employment charts which indicated that Velasco, a Hispanic, was hired on September 28, 1973 to fill the position for which plaintiff was under consideration. Consideration of these facts should have led to the conclusion that plaintiff failed to make out a prima facie case and the complaint should have been dismissed since step (iv) requires proof that after a complainant's rejection the position remained open and the employer continued to seek applicants from persons of plaintiff's qualifications.
Defendant argues that the fourth prong of the McDonnell Douglas test had not been met for the further reason that it chose Gilberto Velasco over plaintiff from a pool of applicants; they did not seek more applications after rejecting plaintiff, nor did they keep the position open.
In response plaintiff contends he did meet his burden of establishing a prima facie case because Velasco was not hired until a few days after plaintiff had gone for his physical examination. Therefore, plaintiff argues, defendant continued to seek applications after plaintiff's rejection. There is confusion and conflicting evidence in the record concerning exactly what date plaintiff was rejected. We find it unnecessary to resolve the dispute as to whether plaintiff made out a prima facie case because of our disposition of other issues raised in the appeal.
*259 Assuming plaintiff has met the four-prong test of McDonnell Douglas and established a prima facie case, then the burden of proof shifts to defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824; Texas Community Affairs Dep't v. Burdine, 450 U.S. 248, 252, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207, 215 (1981); Peper v. Princeton Univ. Board of Trustees, 77 N.J. at 83.
Defendant's articulated reason for selecting Velasco over plaintiff was that plaintiff had "insufficient maintenance experience." This was amplified at the hearing by the statement that Velasco had more maintenance experience than plaintiff and more "hands-on" experience. Velasco's qualifications were not developed in detail at the hearing, the hearing examiner expressing the opinion that it was not necessary to compare Velasco's qualifications with those of plaintiff.
The employer having articulated a lawful reason for the employment decision, the burden of proof shifts back to plaintiff. Persuasion that the articulated reason was the motivating reason is not essential. Texas Community Affairs Dep't v. Burdine, supra, 450 U.S. at 254, 101 S.Ct. at 1094, 67 L.Ed.2d at 216.
Having proceeded through the preliminary stages, the burden at this point shifts to plaintiff to demonstrate that the proffered reason is not the true reason for the employment decision. This burden now merges with plaintiff's ultimate burden of persuading the administrative agency that he has been the victim of intentional unlawful discrimination. Texas Community Affairs Dep't v. Burdine, supra, 450 U.S. at 255, 101 S.Ct. at 1095, 67 L.Ed.2d at 217. Despite the rules relating to this shifting burden, the decisions all emphasize that the ultimate burden of proving intentional discrimination rests upon plaintiff to establish by a preponderance of the evidence that unlawful discrimination, in fact, occurred. Peper v. Princeton Univ. Trustee Board, supra, 77 N.J. at 80; Texas Community Affairs Dep't v. *260 Burdine, supra, 450 U.S. at 257, 101 S.Ct. at 1096, 67 L.Ed.2d at 218.
We have dwelt on this issue of burden of proof because our reading of the report of the hearing examiner convinces us that he erroneously placed upon Kearny the burden of proving that Velasco's qualifications were superior to plaintiff's and in other respects resolved deficiencies in proof against respondent. The hearing examiner totally ignored the legal principle that the burden is on the plaintiff to prove that the asserted reason for hiring Velasco instead of plaintiff was pretextual and that there was in fact intentional racial discrimination.
Our role in the review of the determination of the Division on Civil Rights is that of determining whether the findings could reasonably have been reached on sufficient credible evidence present in the record, considering the proofs as a whole with due regard to the opportunity of the one who heard the witnesses to judge their credibility and with due regard also to the agency's expertise where such expertise is a factor. Mayflower Securities v. Bureau of Securities, 64 N.J. 85, 92-93 (1973). We pause to observe that the resolution of the issues presented in this case involve an evaluation and appraisal of testimony and evidence presented, agency expertise being of relatively minor importance.
We are required to give the record on appeal more than a perfunctory review. We are required to give the agency record a careful and principled consideration. Mayflower Securities v. Bureau of Securities, 64 N.J. at 93; State v. Johnson, 42 N.J. 146, 161-162 (1964). Having done so we are left with the feeling of "wrongness." We are thoroughly satisfied that the findings of the hearing examiner as adopted by the Director are clearly mistaken and so plainly unwarranted that the interests of justice demand our intervention and correction. The findings are in some respects overstated and exaggerated. In many respects the findings are not supported by the record and in others they are simply inaccurate. The hearing examiner and *261 the Director failed to consider and give appropriate weight to evidence which pointed decisively away from racial discrimination as an explanation for plaintiff's rejection. We point to some of the more glaring examples.
In order to sustain a claim of unlawful discrimination under our New Jersey statute, N.J.S.A. 10:5-4, N.J.S.A. 10:5-12, there must be proof of an intent to discriminate for an unlawful purpose. For instance, if an employer is presented with a choice between two qualified applicants, selection of the least qualified because of a greater experience or personal attributes which enhance the applicant's value to the prospective employer is perfectly valid and permissible. Traditional management prerogatives still have validity. As the court said in Texas Community Affairs Dep't v. Burdine, supra:
Title VII prohibits all discrimination in employment based upon race, sex and national origin. "The broad, overriding interest, shared by employer, employee, and consumer, is efficient and trustworthy workmanship assured through fair and ... neutral employment and personnel decisions." McDonnel [sic] Douglas, supra [411 U.S.], at 801, 36 L.Ed.2d 668, 93 S.Ct. 1817 [at 1823]. Title VII, however, does not demand that an employer give preferential treatment to minorities or women. [Citations omitted] The statute was not intended to "diminish traditional management prerogatives." [citation omitted] It does not require the employer to restructure his employment practices to maximize the number of minorities and women hired. [450 U.S. at 259, 101 S.Ct. at 1096, 67 L.Ed.2d at 219.]
In a similar vein the court in the case of Jones v. College of Med. & Dent. of N.J., Rutgers, 155 N.J. Super. 232 (App.Div. 1977), certif. den., 77 N.J. 482 (1978), said:
Discrimination involves the making of choices. The statute does not proscribe all discrimination, but only that which is bottomed upon specifically enumerated partialities and prejudices. Thus, we have held that in discrimination cases an intent to discriminate must be proved. Parker v. Dornbierer, 140 N.J. Super. 185, 189 (App.Div. 1976). Obviously, this means an intent to discriminate for the prohibited purpose charged. [at 236]
The record discloses that during August and September there were seven positions for utility men to be filled. They were filled by four Caucasians and three members of classes protected by the Equal Opportunities Law, two Hispanics and one black. At the time plaintiff applied for a position there were four *262 positions available. They were eventually filled seriatim by one Caucasian, one Hispanic, one black and the final position resolved itself into a choice between a black and a Hispanic. Kearny chose to hire Velasco, an Hispanic and a member of a minority group. Plaintiff contends that determination constituted intentional racial discrimination.
The hearing examiner, the Director and all parties agree that the two Hispanics hired after the plaintiff applied for the position qualify as members of minority groups and, as such, were entitled to the protection of the law against discrimination. Notwithstanding this concession, the hearing examiner found Velasco was a "white Hispanic" but he does not explain how that has any bearing on the issues since it was conceded Velasco was a member of a minority group. The hearing examiner said:
Nevertheless, respondent's willingness to hire three minority individuals  the Hispanics and Bishop  for three of five purported positions is not sufficient to overcome the inferences of past discrimination against non-whites in hiring for the position of Utility Man.
Past discrimination was not properly an issue in the case.
There are many factors in the record which point decisively away from intentional discrimination as an explanation for plaintiff's rejection.
1. Velasco, the man hired instead of plaintiff, is a member of a minority.
2. The man hired immediately before consideration of plaintiff's application, Bishop, is a black.
3. Three out of the four positions available when plaintiff applied for employment were filled by members of a minority.
4. Defendant had in place an approved Affirmative Action Program.
5. Defendant had kept up with the goals of that program and had surpassed the goals in some respects.
6. Analysis of the qualifications of plaintiff and Velasco discloses a rational basis for the exercise of the managerial prerogative in selecting Velasco over the plaintiff. N.J.S.A. *263 10:5-2.1 authorizes "discrimination among individuals on the basis of competence, performance, conduct, or any other reasonable standards." It is clear the hearing examiner erred in ruling it was not relevant to consider the relative qualifications of plaintiff and Velasco.
7. Kearny had adopted a policy in selection of utility men that the best indicator for an applicant's aptitude for the duties required was actual "hands-on" experience with the type of tools or equipment used at Kearny. Examination of the qualifications of Velasco and plaintiff for the position discloses that plaintiff had been employed behind a desk as an airline reservation agent for three years, and prior thereto he was a ramp service man who fueled and maintained hydraulic systems for aircraft. He did not work in a maintenance department; he had some experience as a radar man in the Navy. On the other hand, Velasco received welding and mechanical training in Colombia, South America. He had completed a two-year course in electrical, radio, TV and industrial applications thereof and a correspondence course in color TV. He had been a lathe operator for six years before his application to Kearny, and Kearny believed Velasco's mechanical training and "hands-on" experience operating lathe equipment demonstrated superior qualifications for the job.
In ruling that Kearny's explanation for hiring Velasco instead of plaintiff was pretextual, the hearing examiner pointed to what he considered inconsistent explanations for plaintiff's rejection. This inconsistency was found in the fact that the reason expressed for plaintiff's rejection as recorded on the application for employment in the three lines provided were "insufficient maintenance experience." While at the hearing representatives of Kearny testified that what was meant was that a comparison of the maintenance experience of both plaintiff and Velasco led them to conclude that Velasco possessed greater experience of the kind they desired. The conclusion of the hearing examiner that this exposed a pretextual reason for rejection is wholly unwarranted.
*264 No point will be served by our continued recitation of deficiencies and inaccuracies in the findings and conclusions of the Director. We are satisfied that both the Director and the hearing examiner applied erroneous standards in arriving at the final determination.
We conclude that the Director's determination that plaintiff was rejected because of intentional racial discrimination lacks support in substantial credible evidence in the record as a whole. Plaintiff failed to carry the burden of proof imposed under the circumstances.
The order of the Director dated January 14, 1981, insofar as it relates to the claim of Richard Roper, is
Reversed.