**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3924-16T3

ROBERT BENNING,

      Plaintiff-Appellant,

v.

MIDDLESEX REGIONAL
EDUCATIONAL SERVICES
COMMISSION,

      Defendant-Respondent.

_____

Argued June 7, 2018 — Decided June 25, 2018

Before Judges Haas, Rothstadt and Gooden
Brown.

On appeal from Superior Court of New Jersey,
Law Division, Middlesex County, Docket No. L-
5832-13.

Thomas A. McKinney argued the cause for
appellant (Castronovo & McKinney, LLC,
attorneys; Thomas A. McKinney and Megan Frese
Porio, of counsel and on the briefs).

Eric L. Harrison argued the cause for
respondent (Methfessel & Werbel, attorneys;
Eric L. Harrison, of counsel; Raina M. Pitts,
on the brief).

PER CURIAM

In September 2013, plaintiff Robert Benning filed a one-count complaint against defendant Middlesex Regional Educational Services Commission. He claimed defendant terminated his employment in violation of the Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49, because he had a disability. The trial court subsequently granted defendant's motion for summary judgment, and dismissed plaintiff's complaint. Plaintiff appealed, and we reversed and remanded for a trial on the genuine issues of material fact that permeated the case. Benning v. Middlesex Reg'l Educ. Servs. Comm'n, No. A-0377-15 (App. Div. Nov. 23, 2016).

On remand, a different trial judge conducted a six-day jury trial, and the jury returned a unanimous verdict in favor of defendant. On April 7, 2017, the judge entered a conforming order, and dismissed plaintiff's complaint with prejudice. This appeal followed.

On appeal, plaintiff contends that the judge erred by permitting defendant to present testimony that one of plaintiff's supervisors had previously worked without incident with a similarly, but not identically, situated individual who was disabled and, like plaintiff, had worked with a job coach to assist him in performing his assigned tasks. Plaintiff also argues for the first time on appeal that the judge committed plain error by

A-3924-16T3

failing to strike some comments defendant's attorney made in his opening and closing statements to the jury. Having considered these contentions in light of the record and applicable principles of law, we affirm.

By way of background, the LAD prohibits discriminatory employment practices. Viscik v. Fowler Equip. Co., Inc., 173 N.J. 1, 13 (2002). To prove employment discrimination under the LAD, New Jersey courts have adopted the burden-shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, (1973); Viscik, 173 N.J. at 13-14. Under that analysis, the plaintiff must first present sufficient evidence to establish a prima facie case of unlawful discrimination. Dixon v. Rutgers, 110 N.J. 432, 442 (1988) (citing McDonnell Douglas, 411 U.S. at 807; Peper v. Princeton Univ. Bd. of Trs., 77 N.J. 55, 82-83 (1978)). The defendant then has the burden to present evidence establishing a legitimate, non-discriminatory reason for its employment action. Dixon, 110 N.J. at 442 (citing Peper, 77 N.J. at 83). If the defendant presents such evidence, the burden shifts back to the plaintiff to prove that the defendant's proffered reasons are merely a pretext for unlawful discrimination. Ibid. (citing Peper, 77 N.J. at 83).

"[I]t is not the purpose of the LAD 'to prevent the termination or change of the employment of any person who in the

opinion of the employer, reasonably arrived at, is unable to perform adequately the duties of employment[.]'" Jason v. Showboat Hotel & Casino, 329 N.J. Super. 295, 302-03 (App. Div. 2000) (quoting N.J.S.A. 10:5-2.1). Rather, "[i]n order to sustain a claim of unlawful discrimination under [the LAD], there must be proof of an intent to discriminate for an unlawful purpose." Kearny Generating Sys., Div. of Pub. Serv. v. Roper, 184 N.J. Super. 253, 261 (App. Div. 1982); see also Jones v. Coll. of Med. & Dentistry, 155 N.J. Super. 232, 236 (App. Div. 1977) ("Discrimination involves the making of choices. The statute does not proscribe all discrimination, but only that which is bottomed upon specifically enumerated partialities and prejudices."). Thus, discriminatory motive or intent "is a crucial element in a discrimination case[.]" Goodman v. London Metals Exch., Inc., 86 N.J. 19, 30 (1981).

The parties are fully familiar with the testimony and documentary evidence each presented at trial in an attempt to satisfy their respective burdens under the McDonnell-Douglas test. Therefore, a brief summary will suffice here.

Plaintiff suffers from a cognitive impairment resulting from an episode of cardiac arrest he suffered over thirty years ago. In September 2006, defendant hired plaintiff on a year-to-year contract basis as a teacher's aide, but he soon began working in

defendant's schools as a full-time custodian. These schools serve students with disabilities, who often are unable to properly care for themselves. Therefore, the custodian's job is particularly important because the students need a clean, safe environment during the school day.

Between 2006 and 2009, defendant gave plaintiff "good" and "satisfactory" ratings on his periodic job performance evaluations. In November 2010, however, defendant received an evaluation that stated he needed improvement in six areas, which represented a dramatic falloff in his performance from previous evaluations. Plaintiff alleged that the poor evaluation was issued because he told his supervisor, who had completed all of the prior evaluations, that he was disabled.

Defendant and the supervisor disputed this claim. In addition to carefully documenting their reasons for the November 2010 evaluation and the many more that followed, defendant asserted that its mission was to serve individuals with disabilities, not to discriminate against them. The supervisor also testified that he worked with and accommodated another full-time custodian, B.E.,[1] who "had some heart issues" and needed extra assistance to complete his work. Over plaintiff's objection, defendant also presented

[1] We use initials to protect the privacy of defendant's employees because they are not parties to this appeal.

testimony that E.M., a former student with Downs Syndrome, had worked part-time assisting the custodians with the help of a job coach for a number of years following his graduation without incident or complaint prior to plaintiff becoming a custodian in defendant's schools.

In line with this prior history, defendant held a series of meetings over the next three years with plaintiff to develop plans and accommodations that would enable him to continue to work as a custodian. On his own, plaintiff also arranged with the Division of Vocational Rehabilitation for job coaches to work with him to improve his performance.

The job coaches alleged that with their assistance, plaintiff was doing a good job between 2011 and 2013. One of plaintiff's co-workers, D.K., made a similar claim.[2] However, defendant's supervisors continued to evaluate his performance as poor. In 2011, defendant's primary supervisor recommended that defendant terminate plaintiff's employment. However, defendant extended contracts to plaintiff for the 2011-2012 and 2012-2013 school years even though he continued to receive sub-par evaluations during this period.

---

[2] Defendant alleged that D.K. was a disgruntled employee, who had been dismissed from employment because of his own poor performance.

A-3924-16T3

In 2012, defendant transferred plaintiff to another school, where a new job coach was assigned to help him. Plaintiff alleged that defendant set him up to fail in this new post because he was now responsible for handling a shift by himself and he was unable to do so. He also alleged that his primary supervisor and the school principal spent most of their time trying to document his failings, rather than helping him.

At the conclusion of the school year in 2013, defendant did not rehire plaintiff, and he filed his disability discrimination complaint against defendant later that year. On these facts, the jury found that plaintiff's claim lacked merit, and the trial judge dismissed plaintiff's complaint with prejudice.

In Point I of his brief, plaintiff argues that the trial judge erred by denying his pre-trial request to bar defendant from presenting any testimony regarding its interactions with E.M. We disagree.

Our standard of review of a trial court's decisions on evidentiary questions is well settled. "When a trial court admits or excludes evidence, its determination is 'entitled to deference absent a showing of an abuse of discretion, i.e., [that] there has been a clear error of judgment.'" Griffin v. City of E. Orange, 225 N.J. 400, 413 (2016) (alteration in original) (quoting State v. Brown, 170 N.J. 138, 147 (2001)). "Thus, we will reverse an

evidentiary ruling only if it 'was so wide [of] the mark that a manifest denial of justice resulted.'" Ibid. (quoting Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492 (1999)). Applying this highly deferential standard of review, we discern no basis for disturbing the trial judge's decision allowing defendant to provide testimony about E.M.

Plaintiff argues that this testimony was "irrelevant to any facts at issue[,]" primarily because E.M. was not a full-time custodian and, therefore, was not identically situated to plaintiff. However, this evidence was plainly relevant because a plaintiff in a LAD case is required to demonstrate that the defendant had an "intent to discriminate for an unlawful purpose." Roper, 184 N.J. Super. at 261. Therefore, defendant was clearly permitted to show that it lacked this required intent as part of the burden shifting paradigm established in McDonnell-Douglas.

Accordingly, defendant presented testimony that it operated a school system that was specifically designed to assist individuals with disabilities similar to, and different from, plaintiff's specific condition. Defendant also produced evidence that its staff, including the supervisor who was evaluating plaintiff's performance, had worked with B.E., a full-time custodian with a heart condition, and E.M., a part-time worker, who was hired to assist the custodians despite his disability.

A-3924-16T3

This evidence was obviously relevant because it had "a tendency in reason to prove or disprove any fact of consequence to the determination of the action[,]" N.J.R.E. 401; that is, whether defendant and its supervisory staff had an intent to discriminate against plaintiff for an unlawful purpose. Therefore, the judge did not abuse her discretion by denying plaintiff's request to bar this testimony.

We also reject plaintiff's contention that the testimony about E.M. was "unduly prejudicial" to him. Contrary to plaintiff's allegations, defendant's non-discriminatory treatment of E.M. was not the lynchpin of its defense. Instead, defendant primarily relied upon the documentation it amassed during plaintiff's employment concerning his poor performance, and evidence of its many attempts to accommodate his disability so that he could remain employed. While plaintiff objected to the testimony concerning E.M., he lodged no complaint when defendant presented similar evidence concerning B.E., and testimony concerning its overall mission to serve individuals with disabilities. The testimony was not "inflammatory" in any way and, as stated above, directly addressed plaintiff's allegation that defendant intentionally discriminated against him on the basis of his disability.

A-3924-16T3

Plaintiff's argument that defendant failed to disclose that it planned to discuss its relationship with E.M. at trial is also without merit. In his written discovery requests, plaintiff only asked for information concerning custodians employed from 2009 to the present. Because E.M. left defendant's employ prior to 2009, defendant had no obligation to include him in its response to this inquiry. However, plaintiff's supervisor testified about E.M. at his deposition in December 2014, more than two years before the trial began. Even though plaintiff was therefore fully aware of E.M. and defendant's positive employer-employee relationship with him, plaintiff never asked for any additional discovery concerning this former employee. Under these circumstances, plaintiff can certainly not complain that he was unfairly surprised when defendant sought to introduce this already-discovered evidence at the trial.[3]

Turning to Point II, plaintiff argues that the trial judge erred by not striking certain comments defense counsel made in his opening and closing statements. Again, we disagree.

It is well settled that courts "afford counsel broad latitude in closing arguments." Tartaglia v. UBS PaineWebber, Inc., 197

---

[3] In this regard, the judge limited defendant to discussing only the specific matters the supervisor relayed at his December 2014 deposition. Therefore, plaintiff knew the exact scope of the proffered testimony before it was presented.

N.J. 81, 128 (2008) (citing Bender v. Adelson, 187 N.J. 411, 431 (2006)).  In fact, "[c]ounsel may argue from the evidence any conclusion which a jury is free to reach."  Colucci v. Oppenheim, 326 N.J. Super. 166, 177 (App. Div. 1999).  "[C]ounsel may [also] draw conclusions even if the inferences that the jury is asked to make are improbable, perhaps illogical, erroneous or even absurd."  Bender, 187 N.J. at 431 (quoting Colucci, 326 N.J. Super. at 177).

If counsel does not object to comments made by opposing counsel in his or her arguments to the jury, we "review these remarks under the plain error standard."  Tartaglia, 197 N.J. at 128.  Therefore, we "must determine whether defense counsel's comments had the 'clear capacity for producing an unjust result.'"  Ibid. (quoting State v. Melvin, 65 N.J. 1, 18 (1974)).

Applying this standard, we discern no error, much less plain error, that would justify disturbing the jury's verdict.  In his opening statement, defense counsel stated that "[i]n 2010 to 2013 [plaintiff's] performance deteriorated."  In his final summation, the attorney acknowledged that defendant was not disputing that plaintiff had a disability, but also stated, "[w]e don't know if it's progressive" and that "[b]rain injuries are mysterious." Plaintiff's attorney did not object to any of these comments.

On appeal, however, plaintiff argues for the first time that the remarks were not based on the evidence presented at the trial

11                                          A-3924-16T3

because no medical testimony of any kind was presented concerning plaintiff's specific condition.  Therefore, he argues that because the judge did not sua sponte strike these comments from the record, he is entitled to a new trial.

This contention lacks merit.  Defense counsel's remarks were clearly fair comment on the evidence presented.  Plaintiff's performance over the three years prior to his termination had "deteriorated" in defendant's view because he was not satisfactorily completing the same tasks he had successfully performed in the preceding years.

The obvious purpose of the attorney's comments concerning the possible role plaintiff's condition played in his plummeting job evaluations was to drive home the point that an employer may terminate a disabled employee for poor performance especially where, as here, the employer makes accommodations to bring him back to the level of performance he previously delivered while employed by the defendant.  Dixon, 110 N.J. at 442.

Finally, the judge cautioned the jurors that the attorney's comments were not evidence in her final charge to them.  Thus, we cannot conclude that defense counsel's statements had the capacity to cause the jury to deliver a verdict it otherwise would not have reached.  See R. 2:10-2; Tartaglia, 197 N.J. at 128.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12

A-3924-16T3