723 A.2d 944

BERGEN COMMERCIAL BANK, PLAINTIFF–APPELLANT,
v. MICHAEL SISLER, DEFENDANT–RESPONDENT.

Argued November 9, 1998—Decided February 24, 1999.

*Angelo J. Genova,* argued the cause for appellant (*Genova, Burns & Vernoia,* attorneys; *James M. Burns,* of counsel; *Elizabeth A. Daly,* on the brief).

*Kevin M. Kiernan*, argued the cause for respondent (*McDonough, Kiernan & Campbell*, attorneys).

The opinion of the Court was delivered by

STEIN, J.

This is a case of first impression requiring the Court to decide whether respondent Michael Sisler, twenty-five years old at the time of his discharge, can invoke the anti-age-discrimination provisions of the New Jersey Law Against Discrimination (LAD), *N.J.S.A.* 10:5-1 to -42, as a basis for his claim that he was wrongfully terminated because of his employer's perception that he was too young for the job. Should the Court decide that such a claim is cognizable under the LAD, the Court must also determine the appropriate substantive and procedural framework under which a claim alleging employment discrimination on the basis of youth should be evaluated.

I

In 1993, respondent Michael Sisler was recruited by petitioner Bergen Commercial Bank (Bergen Bank) to operate its merchant credit-card programs. At the time, Sisler was employed by New Era Bank in its merchant credit-card department and he was not actively seeking employment. During the recruitment process, Sisler was contacted regarding his possible employment by both Mark Campbell, president and chief executive officer of Bergen Bank, and Tony Bruno, the bank's chairman and co-founder. After several meetings, Sisler was offered the position of vice-president of credit-card operations at a salary of $70,000 per year, and he accepted.

Shortly before starting his employment with Bergen Bank, Sisler met Bruno for lunch. During this lunch meeting, Bruno for the first time asked Sisler his age. When Sisler responded that he was twenty-five years old, Bruno allegedly "appeared shocked" and asked Sisler not to tell anyone else his age. Bruno indicated that it "would be embarrassing to [Bruno] if other people in the

bank found out how old [Sisler] was and what [he] had been hired for, both [his] responsibilities and [his] salary."

On September 1, 1993, Sisler commenced work with Bergen Bank. Eight days later, Bruno and Campbell called Sisler into Bruno's office for a meeting. According to Sisler, Bruno and Campbell indicated that "they didn't think this was going to work," that "they wanted to make some changes," and that Sisler might be terminated. As an alternative, Bruno and Campbell suggested that Sisler relinquish his position and work for the bank in another capacity, perhaps as a consultant. Sisler reacted to the news with surprise. He was incredulous that they could reach such a negative decision about his abilities after such a short period of employment and without having spoken to him about their dissatisfaction. Sisler told Bruno and Campbell that he felt they had not given him an opportunity to prove himself. He therefore refused an alternative employment arrangement and maintained his vice-president position.

During the course of his brief employment with Bergen Bank, Sisler was never informed by Bruno or Campbell of any deficiencies in his performance. Sisler was nonetheless terminated on January 21, 1994, less than five months after commencing his employment with the bank. The termination followed a meeting during which Bruno and Campbell explained that it simply "wasn't working out." Thereafter the bank replaced Sisler with Kenneth Hardaker, aged thirty-one.

After an unsuccessful attempt to settle his potential age discrimination claim, Sisler's attorney informed the bank that he intended to file a lawsuit. In August 1994, before Sisler's lawsuit could be filed, Bergen Bank filed the instant complaint against Sisler alleging conversion of bank files, breach of duty of loyalty, intentional interference with business relations, and trespass.[1]

---

[1] According to the complaint, Sisler, following his discharge, entered his office and removed several computer files and downloaded data concerning Bergen Bank's operations. On February 2, 1994, Sisler returned two computer disks

Sisler filed an answer and counterclaim, asserting one count of employment discrimination on the basis of age, in violation of the LAD, and one count of breach of contract.

In February 1996, although interrogatories were outstanding and Sisler had not yet deposed Bruno or Campbell, Bergen Bank filed a motion seeking partial summary judgment on Sisler's LAD counterclaim. In support of its motion, the bank asserted that the LAD's prohibition of age discrimination does not apply to twenty-five-year-old claimants. The trial court granted Bergen Bank's summary judgment motion, holding "there is no doubt of the intent of the legislature" to limit the "age" protected class to persons above forty years of age. Sisler's motion for reconsideration was denied. In February 1997, the parties agreed to dismiss voluntarily and without prejudice all remaining claims, for the purpose of allowing respondent to appeal the trial court's decision that the LAD's protection was limited to persons over the age of forty.

The Appellate Division reversed the dismissal of Sisler's counterclaim. *Bergen Commercial Bank v. Sisler*, 307 *N.J.Super.* 333, 704 *A.*2d 1017 (1998). Initially, the court found that the LAD does not limit its protection to older workers but more broadly affords protection to any worker, whether old or young, who suffers an adverse employment action on account of age. *Id.* at 342, 704 *A.*2d 1017. In addition, the court found that because older workers form the presumptive protected class under the anti-age-discrimination provisions of the LAD, Sisler's claim that he was fired based on his employer's perception that he was too young for the job is appropriately analyzed on the basis of the "reverse-discrimination" formulation adopted by this Court in *Erickson v. Marsh & McLennan Co.*, 117 *N.J.* 539, 569 *A.*2d 793 (1990). 307 *N.J.Super.* at 346–47, 704 *A.*2d 1017. This Court granted Bergen Bank's petition for certification. 153 *N.J.* 216, 708 *A.*2d 67 (1998).

---

and several files, but the bank was uncertain whether the files were complete. Later, it was allegedly discovered that Sisler had deleted certain computer files.

The principal issue on appeal is whether the Legislature, in amending the LAD to prohibit age-based employment discrimination, completely eliminated "age"—whether old or young—as a permissible factor in employment decisions or whether, alternatively, the Legislature in its proscription intended to protect only the historically disadvantaged class of older workers.

## II

### A

The purpose of the LAD is to ban employment discrimination on the basis of certain enumerated attributes including, at issue here, age. The LAD recognizes the opportunity to obtain employment as a civil right. *Fuchilla v. Layman*, 109 *N.J.* 319, 332, 537 *A.*2d 652, *cert. denied*, 488 *U.S.* 826, 109 *S.Ct.* 75, 102 *L. Ed.*2d 51 (1988). In support of that right, the "overarching goal" of the LAD, reflecting the clear public policy of this State, "is nothing less than the eradication 'of the cancer of discrimination'" in the workplace. *Id.* at 334, 537 *A.*2d 652 (quoting *Jackson v. Concord Co.*, 54 *N.J.* 113, 124, 253 *A.*2d 793 (1969)). Initially enacted in 1945, the LAD has since been amended repeatedly "as part of a gradual legislative response directed toward eliminating forms of discrimination not theretofore banned by statute." *Peper v. Princeton Univ. Bd. of Trustees*, 77 *N.J.* 55, 68, 389 *A.*2d 465 (1978). In 1962 the Legislature amended the LAD to include "age" among the characteristics protected under the statute. *L.* 1962, *c.* 37.

Two sections of the LAD prohibit age discrimination. *N.J.S.A.* 10:5–4 provides in pertinent part:

All persons shall have the opportunity to obtain employment ... without discrimination because of ... age ..., subject only to conditions and limitations applicable alike to all persons. This opportunity is recognized as and declared to be a civil right.

*N.J.S.A.* 10:5–12(a) in pertinent part provides:

It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination ... [f]or an employer, because of the ... age ... of any individual

... to refuse to hire or employ or to bar or to discharge or require to retire ... from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment....

The determination of whether those provisions protect only older workers from age discrimination is a question of statutory interpretation requiring the Court to construe *N.J.S.A.* 10:5–4 and – 12(a) in a manner consistent with both the LAD's plain language and its underlying purpose.

As a starting point, this Court in "outlining approaches and infusing discrimination claims under the LAD with substantive content" typically has looked to federal cases arising under analogous provisions of Title VII of the Civil Rights Act of 1964, 42 *U.S.C.A.* § 2000e–2 (Title VII) and the Age Discrimination in Employment Act, see 29 *U.S.C.A.* § 623(a) and § 631(a) (ADEA). *Grigoletti v. Ortho Pharm. Corp.*, 118 *N.J.* 89, 96–97, 570 *A.2d* 903 (1990); *see also Waldron v. SL Indus., Inc.*, 849 *F.Supp.* 996, 1000 (D.N.J.1994) ("Age discrimination claims under the LAD and the ADEA are governed by the same standards and burden of proof structures applicable under Title VII of the Civil Rights Act of 1964 ...."), *rev'd on other grounds*, 56 *F.*3d 491 (3d Cir.1995); *Shaner v. Horizon Bancorp.*, 116 *N.J.* 433, 437, 561 *A.2d* 1130 (1989) ("[The LAD] standards have been influenced markedly by the experience derived from litigation under federal anti-discrimination statutes."); *Giammario v. Trenton Bd. of Educ.*, 203 *N.J.Super.* 356, 361, 497 *A.2d* 199 (App.Div.) (holding plaintiffs' LAD claim of age discrimination under disparate impact theory appropriately analyzed by reference to federal cases addressing disparate impact claims arising under "[s]imilar provisions" of the ADEA and Title VII), *certif. denied,* 102 *N.J.* 336, 508 *A.2d* 212 (1985), *cert. denied,* 475 *U.S.* 1141, 106 *S.Ct.* 1791, 90 *L. Ed.2d* 337 (1986). To the extent the federal standards are "useful and fair," they will be applied in the interest of achieving a degree of uniformity in the discrimination laws. *Peper, supra,* 77 *N.J.* at 81, 389 *A.2d* 465.

Consistent with that approach, Bergen Bank urges the Court to adopt the reasoning in *Burke v. Township of Franklin,* 261

*N.J.Super.* 592, 601, 619 *A.2d* 643 (App.Div.1993), in which the Appellate Division held that the plaintiff, thirty-nine years old at the time of his application for a police promotion, did not fall within the LAD's protected "age" class. Relying on the proposition that LAD age discrimination claims "should be 'analyzed by examination of federal cases arising under Title VII and the ADEA,'" the *Burke* panel read the ADEA's "at least 40 years of age" restriction into the LAD. *Id.* at 601–02, 619 *A.2d* 643 (quoting *Giammario, supra,* 203 *N.J.Super.* at 361, 497 *A.2d* 199); *cf. Fischer v. Allied Signal Corp.,* 974 *F.Supp.* 797, 805 (D.N.J. 1997) (predicting New Jersey would incorporate ADEA "over-forty" age specification into LAD).

In this case, however, the Appellate Division disagreed with the holding in *Burke,* citing differences between the pertinent language of the LAD and that of the ADEA. The ADEA provides in pertinent part:

It shall be unlawful for an employer—

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;

(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age....

[29 *U.S.C.A.* § 623(a).]

Further, 29 *U.S.C.A.* § 631(a) specifies that "[t]he prohibitions in [the ADEA] shall be limited to individuals who are at least 40 years of age." Thus, unlike the LAD, the ADEA by its terms limits its protection to "older" workers. *See Robinson v. Sizes Unlimited, Inc.,* 685 *F.Supp.* 442, 446 n. 8 (D.N.J.1988) (recognizing that LAD, unlike ADEA, does not contain minimum age limit); *Murray v. Newark Hous. Auth.,* 311 *N.J.Super.* 163, 172 n. 6, 709 *A.2d* 340 (Law Div.1998) (noting that factors derived from federal precedent must be modified to reflect fact that LAD, unlike ADEA, does not specify ages to which it applies).

Where a provision of the LAD differs substantively from Title VII or the ADEA, a court must conduct its own analysis in

order to discern the underlying legislative intent. *Lehmann v. Toys 'R' Us, Inc.,* 132 *N.J.* 587, 600–01, 626 *A.*2d 445 (1993); *Grigoletti, supra,* 118 *N.J.* at 107–08, 570 *A.*2d 903. The first step in any statutory analysis is to examine the statute's.plain language as the clearest indication of its meaning. *National Waste Recycling, Inc. v. Middlesex County Improvement Auth.,* 150 *N.J.* 209, 223, 695 *A.*2d 1381 (1997); *State v. Szemple,* 135 *N.J.* 406, 421, 640 *A.*2d 817 (1994); *Merin v. Maglaki,* 126 *N.J.* 430, 434, 599 *A.*2d 1256 (1992). Where the statutory language is "clear and unambiguous," courts will implement the statute as written without resort to judicial interpretation, rules of construction, or extrinsic matters. *In re Estate of Post,* 282 *N.J.Super.* 59, 72, 659 *A.*2d 500 (App.Div.1995). Sisler argues that because *N.J.S.A.* 10:5–4 and –12(a) protect "[a]ll persons" from employment discrimination on the basis of age and neither section, on its face, specifies an age at which persons qualify for this protection, the language of *N.J.S.A.* 10:5–4 and –12(a) is clear and does not create ambiguities.

A statute's meaning is not self-evident, however, where varying interpretations of the statute are plausible. *National Waste, supra,* 150 *N.J.* at 223, 695 *A.*2d 1381; *Szemple, supra,* 135 *N.J.* at 421–22, 640 *A.*2d 817. In this case, the trial court narrowly construed the term "age" as referring only to older workers. The Appellate Division disagreed and concluded that the LAD should be interpreted more broadly as protecting workers of any age from employment discrimination based upon that attribute. Those divergent interpretations militate against a finding that the meaning of the term "age" is facially obvious or self-evident. *Szemple, supra,* 135 *N.J.* at 421–22, 640 *A.*2d 817.

Similarly, the courts of Washington and Oregon have disagreed on whether younger workers are protected by state anti-age-discrimination provisions that, like New Jersey's, do not facially limit the protected class to older workers. In *Gross v. Lynnwood,* 90 *Wash.*2d 395, 583 *P.*2d 1197, 1198 (1978), the Supreme Court of Washington rejected the thirty-five-year-old plaintiff's claim that his application for employment as a firefighter was unlawfully

rejected on the basis of his age. Although the state's law against age discrimination, *Wash. Rev.Code Ann.* § 49.60.180 (Section 180), on its face, did not limit its protection to persons of any particular age group, the court felt constrained to read Section 180 *in pari materia* with another section adopted in the same legislation, *Wash. Rev.Code Ann.* § 49.44.090 (Section 90), thereby limiting Section 180 "to situations where the discriminatee is between the ages of 40 and 65." *Id.* 583 *P.*2d at 1199. That interpretation, the court concluded, was consistent with "the general purpose of an age discrimination statute ... to provide protection for the mature worker who may encounter difficulty obtaining or maintaining employment in a youth oriented market." *Ibid.*

Conversely, in *Ogden v. Bureau of Labor,* 299 *Or.* 98, 699 *P.*2d 189, 191–92 (1985), the Supreme Court of Oregon affirmed that portion of an appellate court's holding that extended the state's anti-age-discrimination provisions to plaintiffs under forty years of age. *See Ogden v. Bureau of Labor,* 68 *Or.App.* 235, 682 *P.*2d 802, 807 (1984). In *Ogden,* the thirty-year-old plaintiff alleged she was not hired for a beautician position on the basis of her age. Oregon's anti-discrimination statute provided, in pertinent part, that

it is an unlawful employment practice ... [f]or an employer, because of an individual's ... age if the individual is 18 years of age or older and under 70 years of age ... to refuse to hire or employ or to bar or discharge from employment such individual.

[*Ogden, supra,* 682 *P.*2d at 807 (quoting *Or.Rev.Stat.* § 659.030(1)(a)).]

Based on a plain reading, the court found that the plaintiff, who was "over the age of 18 and under the age of 70[, was] ... entitled to rely on this statute." *Ogden, supra,* 682 *P.*2d at 807. Recognizing that the defendant's clientele "averaging between 80 and 95 years of age [might] prefer the company of a person in mid-life," the court nonetheless concluded that "there is nothing ... to suggest that a younger person, otherwise qualified as a beautician, would disrupt the normal operation of [the defendant's] business." *Id.* 682 *P.*2d at 810. Moreover, the court observed that

> [t]he purpose of employment discrimination statutes is to discourage the use of categories in employment decisions which ignore the individual characteristics of particular applicants. By declaring discrimination on the basis of age an unlawful employment practice, the legislature recognized that age alone may bear no relation to a person's ability to perform a job or contribute to society. This is not to deny that age indirectly figures into employment decisions based on experience requirements. Such requirements are valid when they relate to the demonstrated needs of the employer and the actual capabilities of an individual to perform the job. But, when, as here, a qualified applicant is not hired for an available position, no legitimate reason is offered for not hiring that person and age *per se* was a factor in the decision, we hold that the commissioner did not err in concluding that the decision constitutes an unlawful employment practice under ORS 659.030(1)(a).
>
> [<em>Ibid.</em>]

Thus, whereas the Washington court felt constrained by policy considerations to limit its age discrimination provisions to "mature workers," the Oregon court, reading its statute plainly, concluded that "age" should not be so narrowly construed, citing the broad legislative purpose behind discrimination laws of discouraging employer reliance on stereotypes rather than individual assessments. Those decisions lend support to Bergen Bank's position in this case that the legislative intent in proscribing age discrimination is not apparent on the statute's face.

■ In interpreting a statute courts should avoid a construction that would render "any word in the statute to be inoperative, superfluous or meaningless, or to mean something other than its ordinary meaning." *Estate of Post, supra,* 282 *N.J.Super.* at 72, 659 *A.*2d 500. *N.J.S.A.* 10:5–2.1 (Section 2.1) which sets terms of "General construction" for the LAD, establishes certain acceptable age limitations:

> Nothing contained in this act ... shall be construed to require ... the employment of any person under the age of 18, nor to prohibit the establishment and maintenance of bona fide occupational qualifications or the establishment and maintenance of apprenticeship requirements based upon a reasonable minimum age, nor to prevent the termination or change of the employment of any person who in the opinion of the employer, reasonably arrived at, is unable to perform adequately the duties of employment, nor to preclude discrimination among individuals on the basis of competence, performance, conduct or any other reasonable standards....

Section 2.1 thus permits employers to deny employment to persons "under the age of 18," but otherwise prohibits age discrimina-

tion unless an age limitation qualifies as a "bona fide occupational qualification" or a reasonable apprenticeship requirement. Arguably, reading the anti-age-discrimination provisions of the LAD as applying only to workers over forty would render those portions of Section 2.1 "inoperative, superfluous or meaningless." *Estate of Post, supra,* 282 *N.J.Super.* at 72, 659 *A.*2d 500.

Moreover, in the public employment sector the Legislature has explicitly stated its intent to limit discrimination protections to a particular age group. The Employment in Public Service Law, *N.J.S.A.* 10:3–1, provides in pertinent part:

In the selection of persons for employment in the service of the State, or of any county or municipality thereof, no appointing officer shall discriminate against any such applicant because such applicant has attained the age of at least 40 years, at the time of his said application for employment.

■ Given the contradictory interpretations of the statute by the courts below, we may rely upon extrinsic aids such as legislative history, legal commentary and prior precedent, if available, in seeking the legislative intent. *National Waste, supra,* 150 *N.J.* at 224, 695 *A.*2d 1381. Unfortunately, the 1962 amendment to the LAD, which added "age" to the statute's list of protected classes, contains no statement of purpose. *L.* 1962, *c.* 37. The statute's legislative history is, as the Appellate Division noted, "scant at best" and unilluminating of the enactment's purpose. Therefore, Bergen Bank urges the Court to consider, as evidence of the Legislature's intent to limit the LAD's age discrimination provisions to persons forty years and older, two studies released prior to passage of the "age" amendment. Although there is no indication that the Legislature relied on or adopted these studies, they may bear on the legislative purpose in that they were issued just prior to passage of the amendment, and one of the studies was conducted by the New Jersey Commission on Aging (COA), established by the Legislature in 1959. See *Shapiro v. Essex County Bd. of Chosen Freeholders,* 177 *N.J.Super.* 87, 93, 424 *A.*2d 1203 (Law Div.1980) ("In seeking the intent of the Legislature, any history which may be of aid must be consulted. In this regard, the reports of special committees or commissions appoint-

ed to study and suggest legislation are considered valuable aids.")
(citations omitted).

The first, "A Positive Study Towards Aging," was published by
the Old Age Study Commission (OASC) in 1957 as a collection of
data compiled by the OASC through public hearings on the
subject of aging. One chapter of the study entitled "The Econom-
ics of Aging," considers the needs of older workers, the impact of
outdated stereotypes about older workers on their ability to
secure and maintain employment, and suggestions for increasing
the number of older workers in the marketplace. Although the
OASC study does not suggest expanding the LAD's protected
class to include older workers, it does note substantial evidence
"that in the modern labor market workers were beginning to
encounter 'age barriers' in job changes as early as 45, and that for
women . . . this age discrimination was encountered as low as age
35."

The second study, entitled "Discrimination in Employment Be-
cause of Age," was published by COA in 1959. Citing several
studies dispelling outdated stereotypes regarding the efficiency,
judgment and work quality of older workers, as well as a trend
toward enactment of state anti-age-discrimination legislation, the
COA study concludes that "[a]rbitrary discrimination in employ-
ment against persons solely because they are over 45 years of age
is emerging as a *major social and economic problem facing
America today*." Based on its findings, COA explicitly suggests
that the Legislature "include arbitrary discrimination in employ-
ment because of age between 45 and 65 as an unlawful employ-
ment practice." In support of its recommendation that the Legis-
lature specify qualifying ages for the LAD's protections, the COA
study notes that:

> A *major issue in consideration of past proposed bills in New Jersey has been
> the definition of ages to be covered in the New Jersey statute.* Specification of ages
> is needed because (1) anti-discrimination laws must not interfere with laws on child
> and female labor. (2) *The problem of age discrimination is one of employers'
> setting arbitrary limits on maximum ages for hiring; but it is legitimate and
> justified for an employer frequently to set minimum age and experience require-
> ments. Specification of age coverage in legislation can eliminate possible conflict

with this sound practice, as minimum age specifications almost always center around ages of 25 to 30. (3) Substantially different problems are encountered when dealing with workers over 65 as compared with the 45 to 65 age group.... Although strong arguments exist in favor of raising the mandatory retirement age from 65 to a higher age ..., the prevalence of 65 as normal retirement age both by the Social Security System and by the majority of private retirement plans makes it unwise to legislate anti-discrimination laws for persons over 65 years of age.

[Emphasis added.]

The studies by COA and OASC do evidence the societal problems faced by older persons in the workplace at the time the 1962 amendment was passed. Given the timing of the studies, the Legislature may well have considered them, especially the COA study, in passing the 1962 amendment. On the other hand, even assuming the Legislature acted in direct response to COA's suggestion to amend the LAD, it is clear that COA's recommendation that the protected class be limited to persons aged 45 to 65 was not adopted even though "[a] major issue in consideration of past proposed bills ... ha[d] been the definition of ages."

B

If the LAD is found to support respondent's claim for age discrimination, the Court must also decide the proper standards— both procedural and substantive—under which to evaluate Sisler's age discrimination claim.

In a case alleging age discrimination under the LAD, an employee must "show that the prohibited consideration[, age,] played a role in the decision making process and that it had a determinative influence on the outcome of that process." *Maiorino v. Schering–Plough Corp.*, 302 *N.J.Super.* 323, 344, 695 *A.*2d 353 (App.Div.) (quoting *Miller v. CIGNA Corp.*, 47 *F.*3d 586, 597 (3d Cir.1995)), *certif. denied*, 152 *N.J.* 189, 704 *A.*2d 19 (1997); *Greenberg v. Camden County Vocational & Technical Sch.*, 310 *N.J.Super.* 189, 198, 708 *A.*2d 460 (App.Div.1998); *cf. Rendine v. Pantzer*, 276 *N.J.Super.* 398, 648 *A.*2d 223 (App.Div.1994) (holding no plain error in jury charge that plaintiff required to prove maternity leave and child birth were "substantial" rather than

"determinative" factors in her discharge), *aff'd*, 141 *N.J.* 292, 661 *A.*2d 1202 (1995). Although the discrimination must be intentional, see *Jansen v. Food Circus Supermarkets, Inc.*, 110 *N.J.* 363, 383, 541 *A.*2d 682 (1988), an employee may attempt to prove employment discrimination by either direct or circumstantial evidence. *Greenberg, supra,* 310 *N.J.Super.* at 198, 708 *A.*2d 460.

1.

When an employee attempts to prove discrimination by *direct evidence,* the quality of evidence required to survive a motion for summary judgment is that "which if believed, proves [the] existence of [a] fact in issue *without inference or presumption." Castle v. Sangamo Weston, Inc.*, 837 *F.*2d 1550, 1558 n. 13 (11th Cir.1988) (quoting *Black's Law Dictionary* 413 (5th ed.1979)). In the context of a claim for wrongful discharge, an employee must show "direct evidence that decisionmakers placed substantial negative reliance on an illegitimate criterion"—in this case Sisler's age—in deciding to terminate his or her employment. *Fischer, supra,* 974 *F.Supp.* at 804 (citation omitted). The evidence produced must, if true, demonstrate not only a hostility toward members of the employee's class, but also a direct causal connection between that hostility and the challenged employment decision. *See Price Waterhouse v. Hopkins,* 490 *U.S.* 228, 277, 109 *S.Ct.* 1775, 1804, 104 *L. Ed.*2d 268, 305 (1989) (O'Connor, J., concurring) (noting that stray remarks in the workplace, unrelated to decisional process, not sufficiently direct evidence of discrimination to "justify requiring [an] employer to prove that its hiring or promotion decisions were based on legitimate criteria"); *Young v. City of Houston,* 906 *F.*2d 177, 182 (5th Cir.1990) (holding that employer's referring to plaintiff using derogatory terms such as "white token" not sufficient to show employer relied on race in discharging plaintiff); *Castle, supra,* 837 *F.*2d at 1553, 1558 n. 13 (characterizing as circumstantial evidence employer's commenting "everyone over 35 should be sacked" and referring to older employees as "little old ladies" and "old cows," and contrasting

with example of direct evidence, "a scrap of paper saying, 'Fire Rollins—she is too old.'").

Where an employee is able to satisfy this rigorous burden and establish a direct *prima facie* case that age, *per se,* was a substantial factor in an adverse employment decision, the burden then shifts to the employer to show it would have made the same decision even in the absence of the impermissible consideration. *See Price Waterhouse, supra,* 490 *U.S.* at 242, 109 *S.Ct.* at 1786, 104 *L. Ed.*2d at 283. By allowing an employer to avoid liability even where an impermissible factor contributed to an employment decision, the so-called "mixed-motive" analysis acknowledges that while an employer may not take age into account, it is free to decide against an employee for "other reasons." *Id.* at 244–45, 109 *S.Ct.* at 1788, 104 *L. Ed.*2d at 284; *see also Maiorino, supra,* 302 *N.J.Super.* at 345, 695 *A.*2d 353 (noting that employer is free to discharge employee "'for good reason, bad reason, or no reason at all,' as long as there is no intentional age discrimination") (quoting *Walker v. AT & T Techs.,* 995 *F.*2d 846, 850 (8th Cir.1993)). At the same time, by imposing a higher burden of production on an employer once a *prima facie* showing of discrimination has been made, the analysis recognizes that the production of direct evidence of unlawful discrimination destroys "the same presumption of good faith concerning its employment decisions which is accorded employers facing only circumstantial evidence of discrimination." *Price Waterhouse, supra,* 490 *U.S.* at 265–66, 109 *S.Ct.* at 1799, 104 *L. Ed.*2d at 297–98 (O'Connor, J., concurring).

2.

Alternatively, an employee may prove an employer's discriminatory intent through *circumstantial evidence* using the burden-shifting methodology described by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 *U.S.* 792, 93 *S.Ct.* 1817, 36 *L. Ed.*2d 668 (1973). The *McDonnell Douglas* test was formulated "to compensate for the fact that direct evidence of intentional

discrimination is hard to come by." *Price Waterhouse, supra,* 490 *U.S.* at 271, 109 *S.Ct.* at 1802, 104 *L. Ed.*2d at 301 (O'Connor, J., concurring); *see also Parker v. Dornbierer,* 140 *N.J.Super.* 185, 189, 356 *A.*2d 1 (App.Div.1976) (recognizing that discrimination is not usually practiced openly and intent must be found by examining what was done and said in circumstances of entire transaction). This Court has adopted the *McDonnell Douglas* approach "as a starting point" in analyzing claims under the LAD. *Andersen v. Exxon Co.,* 89 *N.J.* 483, 492, 446 *A.*2d 486 (1982) (applying Title VII to LAD claim alleging failure to hire physically handicapped plaintiff).

The *McDonnell Douglas* standard is a three-stage process, the first stage of which requires the plaintiff to prove, by a preponderance of the evidence, the four elements of a *prima facie* case of discrimination. *McDonnell Douglas, supra,* 411 *U.S.* at 802, 93 *S.Ct.* at 1824, 36 *L. Ed.*2d at 677. A *prima facie* cause of action under the LAD is established when

> [t]he plaintiff [ ] demonstrate[s] by a preponderance of the evidence that he or she (1) belongs to a protected class, (2) applied and was qualified for a position for which the employer was seeking applicants, (3) was rejected despite adequate qualifications, and (4) after rejection the position remained open and the employer continued to seek applications for persons of plaintiff's qualifications.
>
> [*Erickson, supra,* 117 *N.J.* at 550, 569 *A.*2d 793 (brackets in original)(quoting *Andersen, supra,* 89 *N.J.* at 492, 446 *A.*2d 486).]

Establishment of a *prima facie* case gives rise to a presumption that the employer unlawfully discriminated against the employee. *See also Texas Dep't of Community Affairs v. Burdine,* 450 *U.S.* 248, 253, 101 *S.Ct.* 1089, 1094, 67 *L. Ed.*2d 207, 215 (1981) (recognizing that plaintiff's burden in establishing a *prima facie* case "is not onerous"); *Murray, supra,* 311 *N.J.Super.* at 172, 709 *A.*2d 340 (noting that because *prima facie* case is easily made out, existence of *prima facie* case is rarely focus of ultimate disagreement in employment discrimination case). In order to rebut the presumption, the employer in the second stage of the process must come forward with admissible evidence of a legitimate, non-discriminatory reason for its rejection of the em-

ployee. *Burdine, supra,* 450 *U.S.* at 254, 101 *S.Ct.* at 1094, 67 *L. Ed.*2d at 216; *Goodman v. London Metals Exch., Inc.,* 86 *N.J.* 19, 31, 429 *A.*2d 341 (1981).

Where the employer produces such evidence, the presumption of discrimination disappears. *St. Mary's Honor Ctr. v. Hicks,* 509 *U.S.* 502, 507–08, 113 *S.Ct.* 2742, 2747, 125 *L. Ed.*2d 407, 416 (1993). In the third and final stage of the process the burden of production then shifts back to the employee, who has "the opportunity to prove by a preponderance of the evidence that the legitimate nondiscriminatory reason articulated by the defendant was not the true reason for the employment decision but was merely a pretext for discrimination." *Andersen, supra,* 89 *N.J.* at 493, 446 *A.*2d 486 (citation omitted). An employee may meet this burden either by persuading the court "directly 'that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.' " *Murray, supra,* 311 *N.J.Super.* at 173, 709 *A.*2d 340 (quoting *Burdine, supra,* 450 *U.S.* at 256, 101 *S.Ct.* at 1095, 67 *L. Ed.*2d at 217).

Although the burden of production shifts throughout the process, the employee at all phases retains the burden of proof that the adverse employment action was caused by purposeful or intentional discrimination. *Burdine, supra,* 450 *U.S.* at 256, 101 *S.Ct.* at 1095, 67 *L. Ed.*2d at 217. In meeting that burden, the "plaintiff need not prove that age was the sole or exclusive consideration" in the determination to discharge him; rather, he need only show "by a preponderance of the evidence that it made a difference" in that decision. *Murray, supra,* 311 *N.J.Super.* at 174, 709 *A.*2d 340 (quoting *Turner v. Schering–Plough Corp.,* 901 *F.*2d 335, 342 (3d Cir.1990)).

The specific holding in *McDonnell Douglas* applied to racial minorities in the context of a claim for failure to hire. Thus, the criteria of a *prima facie* showing under *McDonnell Douglas* provide "only a general framework for analyzing unlawful discrimination claims and must be modified where appropriate" in order

to conform the test to differing factual contexts. *Erickson, supra,* 117 *N.J.* at 550, 569 *A.*2d 793 (citing *Clowes v. Terminix Int'l, Inc.,* 109 *N.J.* 575, 597, 538 *A.*2d 794 (1988)); *see also McDonnell Douglas, supra,* 411 *U.S.* at 802 n. 13, 93 *S.Ct.* at 1824 n. 13, 36 *L. Ed.*2d at 677–78 n. 13 (recognizing that specification of *prima facie* proof not necessarily applicable in every respect to differing factual situations); *accord Peper, supra,* 77 *N.J.* at 83, 389 *A.*2d 465. Although this Court has recognized a need to harmonize the LAD with Title VII in order to assure a reasonable degree of symmetry and uniformity in the law, "we have not hesitated to depart from the *McDonnell Douglas* methodology if a rigid application of its standards is inappropriate under the circumstances." *Grigoletti, supra,* 118 *N.J.* at 107, 570 *A.*2d 903.

Where as here, for example, the employee is alleging a discriminatory discharge under the LAD, the third element of a *prima facie* case has been modified to permit an employee to recover on proof of discharge rather than requiring proof of failure to hire. *Erickson, supra,* 117 *N.J.* at 551, 569 *A.*2d 793 (citing *Clowes, supra,* 109 *N.J.* at 597, 538 *A.*2d 794).

Similarly, in the age-discrimination context, the fourth element of the *McDonnell Douglas* test has been altered to eliminate the requirement that the plaintiff be replaced with someone outside the protected class:

> The fact that one person in the protected class has lost out to another person in the protected class is ... irrelevant, so long as he has lost out *because of his age.* Or to put the point more concretely, there can be no greater inference of *age* discrimination (as opposed to "40 or over" discrimination) when a 40 year-old is replaced by a 39 year-old than when a 56 year-old is replaced by a 40 year-old. Because it lacks probative value, the fact that an ADEA plaintiff was replaced by someone outside the protected class is not a proper element of the *McDonnell Douglas* prima facie case.
>
> [*O'Connor v. Consolidated Coin Caterers Corp.,* 517 *U.S.* 308, 311, 116 *S.Ct.* 1307, 1310, 134 *L. Ed.*2d 433, 438 (1996).]

*See also McCorstin v. United States Steel Corp.,* 621 *F.*2d 749, 754 (5th Cir.1980) (rejecting "mechanistic application" of fourth *McDonnell Douglas* element in the context of "subtle discrimination" practices typical of age discrimination, noting that because of

the value of experience, "[s]eldom will a sixty-year-old be replaced by a person in the twenties. Rather the sixty-year-old will be replaced by a fifty-five-year-old, who, in turn, is succeeded by a person in the forties, who also will be replaced by a younger person."). The fourth element of a *prima facie* case in an age-discrimination case properly focuses not on whether the replacement is a member of the protected class but on "whether the plaintiff has established a logical reason to believe that the decision rests on a legally forbidden ground." *Murphy v. Milwaukee Area Technical College*, 976 *F.Supp.* 1212, 1217 (E.D.Wis.1997) (citation omitted). Thus, under the LAD, which specifies no qualifying age, courts have modified the fourth element to require a showing that the plaintiff was replaced with "a candidate sufficiently younger to permit an inference of age discrimination." *Kelly v. Bally's Grand, Inc.*, 285 *N.J.Super.* 422, 429, 667 *A.2d* 355 (App.Div.1995) (quoting *Waldron, supra*, 849 *F.Supp.* at 1001).

In this case, the primary dispute is whether Sisler has satisfied the first element of a *prima facie* case by showing that he is a member of a protected class. As Bergen Bank points out, if everyone, regardless of age, is in the protected class, proof of the first element of the *McDonnell Douglas* test would fail to raise an inference of age discrimination. This Court in *Erickson, supra*, also recognized that a literal application of the *McDonnell Douglas* standard, insofar as it requires proof of membership in a protected class, would consistently fail to raise an inference of discrimination against a majority plaintiff. For that reason, in *Erickson* we found it necessary to modify the first element of the test in order to accommodate a claim of reverse gender-based discrimination. 117 *N.J.* at 551, 569 *A.2d* 793.

In *Erickson*, we noted that the rationale underlying the first element of a *prima facie* case "reflects '[c]ongressional efforts to address this nation's history of discrimination against racial minorities, a legacy of racism so entrenched that we presume acts, otherwise unexplained, embody its effect.'" *Ibid.* (quoting *Murray v. Thistledown Racing Club, Inc.*, 770 *F.2d* 63, 67 (6th

Cir.1985)). The presumption of discrimination arising solely from a plaintiff's membership in a historically disfavored group is not necessarily justified when the plaintiff is a member of the majority. *Murphy, supra,* 976 *F.Supp.* at 1216 (citing *Livingston v. Roadway Express, Inc.,* 802 *F.*2d 1250, 1252 (10th Cir.1986)). Therefore, under such circumstances courts have modified the first element of a *prima facie* case to require a showing of "background circumstances support[ing] the suspicion that the defendant is the unusual employer who discriminates against the majority." *Erickson, supra,* 117 *N.J.* at 551, 569 *A.*2d 793 (citations omitted); *see also Murphy, supra,* 976 *F.Supp.* at 1216 (collecting authorities in accord); *cf. Rivera v. Trump Plaza Hotel & Casino,* 305 *N.J.Super.* 596, 604, 702 *A.*2d 1359 (App.Div.1997) (rejecting claim that employer's appearance policy mandating specific hair length and style for men but not women constituted sufficient "background circumstances" to raise inference of gender-based reverse discrimination).

A showing of "background circumstances" suggesting an unusual discriminatory environment is the functional equivalent of and "substitutes for the minority plaintiff's burden to show that he is a member of a racial minority; both are criteria for determining when the employer's conduct raises an 'inference of discrimination.'" *Harding v. Gray,* 9 *F.*3d 150, 153 (D.C.Cir.1993) (citation omitted). An employee can demonstrate "background circumstances" sufficient to raise an inference of discrimination by establishing either that the plaintiff was better qualified for the position than the minority candidate selected or that the defendant had some reason or inclination to discriminate against the majority class. *Murphy, supra,* 976 *F.Supp.* at 1217.

III

A

We hold that the LAD's prohibition against age discrimination is broad enough to accommodate Sisler's claim of age discrimination based on youth. At the outset we agree with the

Appellate Division that significant language differences between the LAD and ADEA preclude wholesale reliance on federal law in deciding whether younger workers are within the ambit of the act's protection. The result in cases applying the ADEA is necessarily driven by the fact that the ADEA by its terms limits the protected class to workers over forty. Because the LAD contains no such express limitation, our decision rests on our independent assessment of the language and purpose of *N.J.S.A.* 10:5–4 and –12(a). See *Grigoletti, supra,* 118 *N.J.* at 107–08, 570 *A.*2d 903. To the extent that *Burke* is inconsistent with our conclusion it is overruled.

Our examination of *N.J.S.A.* 10:5–4 and –12(a) reveals no evidence of a legislative intent to exclude younger workers from the LAD's anti-age-discrimination protection. Together, *N.J.S.A.* 10:5–4 and –12(a) protect "[a]ll persons" from employment discrimination on the basis of age. Neither section, on its face, specifies a qualifying age at which the act's protections vest. Moreover, reading the act in its entirety, it is clear that the LAD is not entirely silent with respect to the age of persons entitled to protection under the state anti-discrimination laws. Specifically, *N.J.S.A.* 10:5–2.1 provides that "nothing in this act ... shall be construed ... to require the employment of any person under the age of 18." That language, fairly read, indicates a clear legislative intent to protect workers over the age of eighteen. That same section carves out an exception to the prohibition of age discrimination against persons eighteen and over only in permitting an employer to establish and maintain reasonable apprenticeship requirements based on a reasonable minimum age. If workers over the age of eighteen were unprotected by the LAD, that exception would be superfluous.

Related state anti-discrimination legislation further supports the conclusion that the LAD protects against age discrimination directed at young workers. In enacting the Employment in Public Service Law, the Legislature explicitly limited the "age" protected class in the public employment sector to persons over forty. *See*

*N.J.S.A.* 10:3–1. Moreover, in 1985 the Legislature added an age ceiling to the LAD, thus conforming the statute to the ADEA's maximum age limitations by providing that "nothing herein contained shall be construed to bar an employer from refusing to accept for employment or to promote any person over 70 years of age...." *N.J.S.A.* 10:5–12(a), as amended by *L.* 1985, *c.* 73, § 3a. Those enactments strongly support an inference that the Legislature has long been aware of its option to align state law with the federal model by limiting the protected "age" class to older workers, but thus far has simply chosen not to so act.

In deciding that the LAD's protections extend to young workers, we are constrained by the principle that the state anti-discrimination laws, as social remedial legislation, are deserving of a liberal construction. *Andersen, supra,* 89 *N.J.* at 495, 446 *A.2d* 486. In that connection, "this Court has been scrupulous in its insistence that the Law Against Discrimination be applied to the full extent of its facial coverage." *Peper, supra,* 77 *N.J.* at 68, 389 *A.2d* 465. We also find that a broad construction of the statute is entirely consistent with the underlying purpose of anti-discrimination laws "to discourage the use of categories in employment decisions which ignore the individual characteristics of particular applicants." *Ogden, supra,* 682 *P.2d* at 810. Thus, we find it entirely consistent with the underlying purposes of the LAD to infer that the Legislature would have intended to protect, for example, a twenty-three-year-old schoolteacher who, despite her outstanding performance in the classroom, was discharged by a local school board because they believed she was too young to teach. Moreover, if we have mistakenly construed the legislative intent, the Legislature remains free to amend the LAD to specify a minimum qualifying age for the law's protection.

### B

#### 1.

Turning to the proper standard against which to evaluate Sisler's claim, we note that Sisler sought below to prove his

discrimination claim using both direct and circumstantial methods of proof. Sisler offered proof of Bruno's remarks and apparent dismay upon learning Sisler's age and Bergen Bank's ensuing conduct in first attempting to demote and then terminating Sisler in January 1994. That evidence, although demonstrating a degree of antipathy toward defendant's protected attribute of youth, does not give rise to any mandatory inference of discrimination based upon age. More specifically, Sisler failed to produce direct evidence of a causal link between Bruno's dismay upon learning Sisler's age and Bergen Bank's decision to terminate his employment. Lacking such direct evidence of causation, Sisler must resort to the *McDonnell Douglas* standard in attempting to establish a *prima facie* case of discrimination. See *Price Waterhouse, supra,* 490 *U.S.* at 277, 109 *S.Ct.* at 1804–05, 104 *L. Ed.*2d at 305 (O'Connor, J., concurring).

2.

We agree with the Appellate Division's conclusion that Sisler's claim is appropriately evaluated under the modified *McDonnell Douglas* standard adopted by this Court in *Erickson,' supra,* 117 *N.J.* at 553, 569 *A.*2d 793. Notwithstanding our conclusion that the LAD does not foreclose an action for discrimination based on youth, that older workers form the presumptive protected class under the anti-age-discrimination provisions of the LAD is clear. *See, e.g., Murray, supra,* 311 *N.J.Super.* at 174, 709 *A.*2d 340 (holding that LAD applied to sixty-five-year old plaintiff); *Greenberg, supra,* 310 *N.J.Super.* at 201, 708 *A.*2d 460 (holding forty-eight-year-old plaintiff "clearly a member of a protected class"); *Geldreich v. American Cyanamid Co.,* 299 *N.J.Super.* 478, 489, 691 *A.*2d 423 (App.Div.1997) ("Plaintiff was in a protected class at age fifty[-]four."); *Kelly, supra,* 285 *N.J.Super.* at 430, 667 *A.*2d 355 (holding sixty-four-year-old member of protected class). The negative stereotyping and other problems faced by older workers in today's youth-oriented employment market have been well-documented in numerous studies, including those presented for our review. As the Appellate Division noted, the overriding

purpose of anti-discrimination legislation is to correct a significant societal problem which, in the context of age discrimination, is the discrimination against older workers in favor of their younger counterparts.

Because Sisler is not a member of a historically disadvantaged class, we affirm the Appellate Division's holding that, in satisfying his *prima facie* burden under the *McDonnell Douglas* formulation, Sisler must conform his proofs to a heightened "reverse-discrimination" formulation. Under the appropriately modified *prima facie* test, Sisler must show: (1) background circumstances supporting the suspicion that the defendant is the unusual employer who discriminates against the majority; (2) that he was performing at a level that met his employer's legitimate expectations; (3) that he was nevertheless fired; and (4) that he was replaced with a candidate sufficiently older to permit an inference of age discrimination.

With respect to his burden under the fourth element, Sisler need not show that he was replaced by a member of the presumptive protected class of "older" workers, but that replacement must be of an age not inconsistent with Sisler's allegations of age discrimination. *See O'Connor, supra,* 517 *U.S.* at 311–12, 116 *S.Ct.* at 1310, 134 *L. Ed.*2d at 438–39 (holding that fourth prong of *prima facie* ADEA claim can be satisfied even if plaintiff is replaced by another person within protected group so long as replacement employee supports inference of discrimination); *Sempier v. Johnson & Higgins,* 45 *F.*3d 724, 729–30 (3d Cir.) (observing that no "particular age difference" is required and that five years has been deemed sufficient to raise inference of age discrimination), *cert. denied,* 515 *U.S.* 1159, 115 *S.Ct.* 2611, 132 *L. Ed.*2d 854 (1995). In addition, Sisler need not show that he was replaced by a worker of equal or lesser qualifications. However, the fourth element does require proof that the plaintiff "was doing his job well enough to rule out the possibility that he was fired for inadequate job performance, absolute or relative," and that "his employer sought a replacement with qualifications similar to his

own, *thus demonstrating a continued need for the same services and skills....* " *Erickson, supra,* 117 *N.J.* at 553, 569 *A.*2d 793 (citation omitted).

The relative qualifications of Sisler and his replacement may be relevant, however, in considering whether Sisler has satisfied his burden under the first element to show "background circumstances" sufficient to raise an inference of discrimination. That is so because, absent some legitimate consideration such as salary, for an employee to be replaced by a candidate of lesser qualifications would be clearly unusual. See *Murphy, supra,* 976 *F.Supp.* at 1217.

Alternatively, an employee may satisfy the burden of proving the first element by showing that "the defendant had some reason or inclination to discriminate" against younger workers. *Ibid.* In that vein, Sisler alleges that after actively being recruited by Bruno on behalf of Bergen Bank, Bruno attempted to discharge him soon after learning Sisler was twenty-five years old and after Bruno advised Sisler not to reveal his age to other bank officials, indicating it "would be embarrassing to [Bruno] if other people in the bank found out how old [Sisler] was and what [he] had been hired for, both [his] responsibilities and [his] salary." Without otherwise resolving whether Sisler has satisfied his *prima facie* burden, we note that, if true, those allegations appear sufficient to satisfy Sisler's burden of demonstrating an "unusual" tendency to discriminate against a majority plaintiff.

We note but reject expressed concerns that our holding will undermine protection for older workers and force employers to fill vacancies for high-level executive positions with unworldly eighteen-year-old applicants. This case presents a highly unusual set of allegations in that, apart from the objective fact of Sisler's age, throughout its campaign to recruit Sisler Bergen Bank apparently was satisfied with all other objective and subjective aspects of his qualifications. Despite our decision that employment decisions may not lawfully rest on age *per se,* employers remain free to decide against employing or promoting a specific individual for any

number of other reasons. Nothing in our decision precludes an employer from "terminat[ing] or chang[ing] ... the employment of any person who in the opinion of the employer, reasonably arrived at, is unable to perform adequately the duties of employment, nor to preclude discrimination among individuals on the basis of competence, performance, conduct or any other reasonable standards." *N.J.S.A.* 10:5–2.1. Such "reasonable standards" may include not only the concrete qualifications of experience and education that are easily reduced to a paper resumé, but also may take into account intangible qualities such as maturity and business or personal judgment that are, incidentally, often acquired only with the passing of years.

The fact that many legitimate reasons for rejecting, terminating or promoting an employee have a strong and natural correlation with age does not render those reasons suspect for purposes of the LAD. Just as discrimination based on seniority may be permissible, despite its high correlation with age and its consequent disparate impact on younger employees, see *State v. State Supervisory Emp. Ass'n,* 78 *N.J.* 54, 84–86, 393 *A.*2d 233 (1978) (noting that civil service laws then in effect require public employee layoffs, "bumping," and reemployment were to be based in part on seniority rights), many other attributes commonly associated with age may lawfully contribute to an employment decision so long as age, *per se,* is not a determinative factor. Moreover, the LAD does not "interfere with the operation of the terms or conditions ... of any bona fide retirement, pension, employee benefit or insurance plan or program." *N.J.S.A.* 10:5–2.1. Thus, we do not perceive that the specification of a minimum age as a condition of eligibility for normal or early retirement is inconsistent with the LAD's requirements. *See also* 29 *U.S.C.A.* § 623(*l*)(1)(A)(1995) (excluding from ADEA proscriptions the specification of minimum age as condition for early retirement).

Viewed in that light, and taking into consideration the current employment market generally favoring younger workers, a plaintiff alleging reverse age discrimination clearly bears a heavy

burden in demonstrating that his employer had "some reason or inclination" to discriminate against youthful employees. Accordingly, although on remand respondent may be successful in satisfying the formidable burden of proof imposed in cases alleging reverse age discrimination, we anticipate that it will be the relatively rare case in which a plaintiff will be able to prevail on a LAD claim premised on the contention that the employer's discriminatory actions occurred because the plaintiff was too young.

## IV

The judgment of the Appellate Division is affirmed and the matter is remanded to the Law Division for further proceedings consistent with this opinion and the opinion of the Appellate Division.

*For affirmance and remandment*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN, and COLEMAN—7.

*Opposed*—None.