**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 09-3295
_____

THOMAS A. FINN,

Appellant

v.

J.B. HUNT TRANSPORT SERVICES, INC.;
X AND Y CORPORATIONS, (said entities being fictitious and presently unknown);
JOHN DOES 1-10, (said entities being fictitious and presently unknown)
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3:07-cv-04851)
District Judge:  Hon. Garrett E. Brown, Jr.

Argued:  January 11, 2011

Before:  MCKEE, Chief Judge, and AMBRO and CHAGARES, Circuit Judges.

(Filed: July 14, 2011)

Neal M. Unger, Esq. (Argued)
Neal M. Unger, P.C.
334 Milltown Road, Third Floor
East Brunswick, New Jersey 08816
        Counsel for Appellant

Madeline S. Baio, Esq.
Carianne P. Torrissi, Esq. (Argued)
Rawle & Henderson, LLP

1

100 West Sixth Street, Suite 300
Media, Pennsylvania 19063
    Counsel for Appellee

_____

OPINION
_____

CHAGARES, Circuit Judge.

Thomas A. Finn appeals from the District Court's grant of summary judgment in favor of J.B. Hunt Transportation Services, Inc. ("J.B. Hunt") on his New Jersey Law Against Discrimination ("NJLAD") claims. For the reasons set forth below, we will affirm the District Court's decision.

I.

Because we write solely for the benefit of the parties, we will only briefly recite the facts. Finn was initially hired as a driver for J.B. Hunt on December 28, 1992, at the age of 48. Shortly thereafter he transferred to an office position, and then was promoted to Safety Manager, a position that he held until 1999. In 1999, Finn was again promoted, this time to the position of Operations Manager, and this promotion was followed with another promotion to Fleet Manager in 2000. In February of 2003, Finn was injured and took leave from work. When he returned in May of that year, he was placed in the position of Area Service Manager (later renamed Logistics Manager) in J.B. Hunt's Elizabeth, New Jersey facility, under the supervision of Cheryl Sawula.

On September 11, 2003, Finn received his first official notice of the fact that he was not meeting Sawula's expectations, which came in the form of a 90-Day

2

Performance Review. In this review, Sawula listed three broad areas of deficient performance (communication with and management of third parties, customer service, and equipment accountability) on which Finn needed to focus. On October 24, 2003, Finn received his first disciplinary action from Sawula when she filed a Job Performance Documentation highlighting the areas outlined in his September Performance Review that still needed improvement. Along with this Job Performance Documentation, Finn was given a one-day suspension and warned that failure to improve his performance could result in termination. In March of 2004, Sawula again submitted a Job Performance Documentation, which outlined areas that still required attention. Finn then had his annual performance review in May, and as part of this review received eleven "Needs Improvement" ratings as well as several "Unacceptable" ratings, the lowest two levels on J.B. Hunt's four-tiered rating system. This evaluation was also reviewed and contained comments written by Sawula's supervisor, Robert Coulter.

In October 2004, Finn was demoted to the position of Fleet Manager, but remained under Sawula's supervision. He received an annual performance review in May of 2005, and again was given an overall rating of "Needs Improvement." This was followed in July of 2005 with a Job Performance Documentation, which stated that "this shall serve as Mr. Tom Finn's written warning regarding professionalism and attitude while at work." Appendix ("App.") 117. Despite the lackluster performance review and the Job Performance Documentation, Finn did receive a bonus at the end of 2005 and a pay raise at the beginning of 2006.

Finn's 2006 annual review came in April, and again had ratings of "Needs Improvement" in eleven categories. As Sawula did not believe that he was adequately improving his performance, Finn was terminated on November 29, 2006, at the age of 62.

Finn filed suit on August 2, 2007, in New Jersey Superior Court, requesting relief under the NJLAD, as well as asserting claims for intentional infliction of emotional distress and breach of contract. Specifically, Finn asserted that he was discriminated against because of his age. He alleged that he was given unmanageable duties to set him up for failure, that his performance was judged more harshly than that of his younger counterparts, and that his termination was part of a broader plan by J.B. Hunt to replace the older portion of its workforce with employees who were substantially younger. The case was removed to the United States District Court for the District of New Jersey on October 5, 2007, and the District Court entered summary judgment in J. B. Hunt's favor on July 7, 2009. Finn filed the instant appeal on August 4, 2009, but appeals only the District Court's decision on his NJLAD claims.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441, and we have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of summary judgment. Bouriez v. Carnegie Mellon Univ., 585 F.3d 765, 770 (3d Cir. 2009).

## III.

Claims brought under the NJLAD that seek to prove discrimination by using circumstantial evidence are evaluated under the McDonnell Douglas framework. Bergen

4

Commercial Bank v. Sisler, 723 A.2d 944, 949, (N.J. 1999). This framework allows the plaintiff to create an inference of discrimination by establishing a prima facie case of discrimination. This prima facie case may then be rebutted by the employer if it is able to articulate a legitimate, nondiscriminatory reason for the adverse employment action. The production of a legitimate, nondiscriminatory reason switches the focus back to the plaintiff who must then prove that the employer's proferred reason was a pretext for discrimination. Id. at 954-55. The District Court in this case determined that Finn had adequately established a prima facie case of discriminatory discharge based upon his age, and that J.B. Hunt successfully provided a legitimate nondiscriminatory reason for his termination—his poor job performance. The District Court concluded, however, that Finn failed to carry his burden of demonstrating that J.B. Hunt's proffered reason was a pretext, and, therefore, failed on his ultimate burden of proving that his termination was motivated by a discriminatory animus. It is on the issue of pretext that Finn focuses his argument.

Finn lists seventeen ways in which he argues that the District Court erred in its treatment of the evidence in this case. Despite Finn's arguments, we agree with the District Court's conclusion that no reasonable juror could have found in Finn's favor on the issue of pretext, and see no need to address each of the specific errors that he finds with the District Court's opinion. We are left with a record that portrays a long period of subpar job performance that is documented adequately by J.B. Hunt, and a request to reach the conclusion that a discriminatory animus existed based on the facts that Finn had worked for J.B. Hunt for fourteen years before he was terminated and that another

5

employee over the age of 55, Paul Mordecai, resigned in 2004 while working under Sawula. To reach such a conclusion would require rampant speculation in which this Court is unwilling to engage. Although Finn has provided evidence to demonstrate that Sawula had higher expectations for his job performance than some of his previous supervisors, he has introduced no evidence that would lead us to conclude that these expectations were motivated by his age or that his termination for poor job performance was motivated by a discriminatory animus. In sum, we see no ground for reversing the District Court's grant of summary judgment on the basis of its treatment of the issue of pretext.

IV.

For the foregoing reasons, we will affirm the judgment of the District Court.