NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4273
_____

RICHARD KREMP,

Appellant,

v.

WACHOVIA BANK, N.A.


_____


On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 09-cv-2847)
District Judge:  Hon. Garrett E. Brown, Jr.
_____


Submitted Under Third Circuit LAR 34.1(a)
November 9, 2011

Before:  SCIRICA, SMITH, and JORDAN, *Circuit Judges*.

(Filed November 14, 2011)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Richard Kremp appeals the order of the United States District Court for the District of New Jersey, granting summary judgment to Wachovia Bank, N.A. ("Wachovia") on Kremp's age discrimination claim. For the following reasons, we will affirm.

## I.    Background[1]

Kremp was employed at Wachovia from 1984 until his termination on November 17, 2008.[2] He began as a teller and eventually became a Vice President/Financial Sales Leader ("FSL") in 1998, the position he held until his termination.

As part of his duties as an FSL, Kremp directly supervised financial specialists in sixteen Wachovia branches in central New Jersey. The financial specialists under his supervision sold banking products, including loans and new accounts. Kremp also had indirect supervisory authority over tellers and financial center managers within his geographic area. His direct supervisor from 2004 until the time of his termination was Peter Ameen, a Retail Bank Director who supervised all FSLs in central New Jersey. Ameen's supervisor at the time of Kremp's termination was Joseph Kirk, a Retail Banking Executive. Kremp was 47 when he lost his job. He testified that several months prior to his dismissal, he heard Ameen make three comments reflecting age-based

---

[1] Because we are reviewing a grant of summary judgment, we recount the facts in the light most favorable to the non-movant, Kremp.

[2] Kremp began his employment with Dime Savings Bank, which, through a series of acquisitions, became part of Wachovia.

2

animus. First, on November 20, 2007, Ameen told Kremp that "[m]aybe one of the younger leaders can do what you can't." (App. at 103.) Second, on March 7, 2008 Ameen told Kremp, "[y]ou're a dinosaur around here and there's a target on your back." (App. at 105.) Finally, on April 9, 2008, Ameen told Kremp "[y]ou better find out what your younger leader peers are doing." (App. at 107.) Prior to the events that led to Kremp's termination, Ameen never expressed concerns about Kremp's honesty or integrity, and, in reviews, Ameen did not express any concerns with respect to Kremp's performance. On the contrary, Kremp's performance reviews were laudatory.

That began to change in October 2008. Wachovia's Corporate Compliance Department ("CCD") detected the improper use of general ledger ("GL") tickets in several Wachovia branches in central New Jersey.[3] Specifically, the CCD notified Jack Sahar, an employee in Wachovia's Retail Operations Division, that three banks in central New Jersey, all within Kremp's area of supervision, were using GL tickets to withdraw money from GL accounts that were designated for the receipt of fee income only. Those GL accounts were being improperly debited to refund or reverse customer fees, and some of the tickets bore the notation "per R. Kremp." Wachovia does not dispute that Kremp had the authority to waive fees, but it maintained a separate system, known as DOTS, to allow for the reversal of customer fees. The DOTS system allowed Wachovia to track fee reversals made by employees. Wachovia utilized the DOTS system for, among other

---

[3] GL accounts are maintained by Wachovia to post internal transactions. There are separate accounts for different expenditure or income transactions. The GL accounts at issue here were used for the deposit of income from service-charge fees and loan fees. GL tickets are used to transfer money to or from these GL accounts.

things, the purpose of holding employees accountable for failing to collect fees and educate customers.

After conducting an initial investigation, Sahar turned the case over to Patricia Moran in Wachovia's fraud department, due to the scale of the misconduct. The investigation identified several employees who prepared a majority of the improper GL tickets. Those improper fee reversals were often not recorded on a single GL ticket at the Wachovia branch where the transaction took place. Instead, the transactions were spread out across different GL tickets and attributed to different New Jersey branches. Moran and a second fraud department employee, Laura Sisto, interviewed the employees identified as having improperly used GL tickets. The first employee interviewed, Alicia Brander, stated that she used GL tickets to offset fees charged to her personal bank account because Kremp told her to do so. Three other employees who directly reported to Kremp, Suzette Bin, Nancy Ludwig, and Royston Hill also indicated that they processed refunds to the fee income accounts using GL tickets, at Kremp's instruction. Yet another Wachovia employee, Andrea Ostrom, indicated that Kremp had asked her to split large fee refunds across different GL tickets and branches. Ostrom also told the fraud investigators that Kremp instructed her to credit the personal account of another Wachovia employee using the GL fee income accounts. Brander was terminated shortly after the fraud investigators met with her; Bin, Ludwig, Hill, and Ostrom were initially suspended and subsequently terminated as well.

Based on the employee interviews that implicated Kremp, along with a number of improper GL tickets approved by him, the fraud investigators met with Kremp on

4

October 30, 2008.  During the interview, Kremp provided general denials, and, depending on the transaction in question, indicated either that he was not involved in approving the transaction or did not recall the circumstances under which the GL ticket had been approved.  Kremp felt that the questioning was disrespectful and unfair, and he left the meeting.[4]

Following that interview, the fraud investigators located additional evidence of GL ticket abuse, which they attributed to Kremp.  That evidence included one ticket approved by Kremp for the amount of $151.48 that was labeled as a "fee reversal" but was instead used to generate a money order payable to "America's Florist."  In another transaction, Kremp used eight separate GL tickets spread across several Wachovia branches to pay for $1,500 of a customer's $2,600 loan fees.[5]  Kremp later testified that he was advised by Wachovia superiors Stan Cohen and Michelle Lee that fee reversals should be spread amongst different branches so that there would not be a high reversal rate in any one branch.  With that additional information, the fraud investigators again met with Kremp on November 13, 2008.  Once more, he indicated that he did not recall the circumstances under which the various GL tickets were approved.

---

[4] Wachovia maintains that Kremp was evasive, feigned ignorance when asked about various GL tickets, and ended the meeting after refusing to provide a written statement.

[5] In that transaction, the full $2,600 fee came from a check drawn on the customer's account, making it appear as though the customer had paid the loan fee in full. That allowed the customer to take advantage of lower interest rates on the loan.

On November 15, 2008, Ameen, Moran, and Kirk, along with three employees from Wachovia's Human Resources Department, conducted a telephone conference to discuss Kremp's discipline.[6] Kirk was the decisionmaker with respect to the termination of Kremp and also led the discussion. The group agreed that termination was appropriate, given the scale of Kremp's misconduct.[7] Kirk believed that an additional ground for terminating Kremp was his failure to cooperate with the investigation during the October 30 and November 13 interviews with the fraud investigators. On November 17, 2008, Kirk, along with a Human Resources employee, met with Kremp to inform him that he was being fired, effective immediately. According to Kremp, he was told it was because of his lack of cooperation during the fraud investigation and that he was only later told that he was fired for unethical sales practices, i.e., for wrongfully using GL tickets to hide refunds.

Ultimately, Kremp and seven other employees were terminated for engaging in GL ticket misconduct. Only one of those employees was older than Kremp, with the ages ranging from seven years older to twenty one years younger than Kremp. According to

---

[6] Although Ameen was on disability leave at the time, he participated in the call. Ameen's direct supervisor, Kirk, assumed Ameen's duties during that time period.

[7] While portions of the Wachovia policy provide for progressive discipline, the policy also allows for immediate termination without prior disciplinary action.

Kremp, a Wachovia employee named Christopher Ruggiero, who was 32 years old at the time, took over Kremp's job.[8]

On December 19, 2008 Kremp filed an internal appeal of his termination. Wachovia denied the appeal, explaining that "Mr. Kremp was discharged for unethical sales practices involving his structuring in fee income only General Ledger ('GL') accounts. He created multiple GL tickets to offset a credit to Wachovia recorded as a fee paid by the customer, when the customer did not pay the fee." (App. at 147.) Wachovia also cited Kremp's alleged failure to cooperate with the fraud investigators in denying his appeal.

Kremp then filed a complaint against Wachovia on May 7, 2009 in New Jersey Superior Court, alleging that he was terminated because of his age in violation of the New Jersey Law Against Discrimination ("LAD"). N.J. STAT. ANN. § 10:5-1 *et seq*. Invoking diversity jurisdiction, Wachovia removed the action to the United States District Court for the District of New Jersey. After discovery, the District Court granted summary judgment for Wachovia. It decided that, even if Kremp could establish a *prima facie* case of discrimination, Wachovia had articulated a valid non-discriminatory reason for terminating him. Further, the District Court held that Kremp had failed to provide evidence sufficient for a factfinder to reasonably determine that Wachovia's non-discriminatory motive was a pretext. This timely appeal followed.

---

[8] Wachovia does not deny that Ruggiero took on some of Kremp's responsibilities, but asserts that the person who finally replaced Kremp was not hired until January 2009 and that she is eight years older than Kremp.

## II. Discussion[9]

Kremp contends that the District Court erred in granting summary judgment for Wachovia on his age-discrimination claim under the LAD. Following the *McDonnell Douglas* framework in employment discrimination cases, New Jersey Law requires a three step inquiry in analyzing LAD claims. N.J. STAT. ANN. § 10:5-12; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973); *Bergen Commercial Bank v. Sisler*, 723 A.2d 944, 954-55 (N.J. 1999). At the first step, the plaintiff-employee must establish a *prima facie* case of discrimination. If the plaintiff succeeds, the burden of production shifts to the defendant-employer to articulate a legitimate, non-discriminatory motive for its action. Finally, if the defendant is able to articulate such a motive, the burden shifts back to the plaintiff to show that the articulated motive was a pretext for discrimination. *Bergen Commercial Bank*, 723 A.2d at 954-55.

Assuming, as did the District Court, that Kremp could make out a *prima facie* claim of discrimination under the LAD, the undisputed facts nevertheless demonstrate that Wachovia had a legitimate non-discriminatory reason for firing him. Even if Kremp had been told by some superiors that he could spread fee reversals across different Wachovia branches using multiple GL tickets, his activities in labeling a debit to a GL

---

[9] The District Court had jurisdiction over this case pursuant to 28 U.S.C. § 1332. We have jurisdiction pursuant to 28 U.S.C. § 1291. Our review of an order granting summary judgment is plenary. *Curley v. Klem*, 298 F.3d 271, 276 (3d Cir. 2002). "A grant of summary judgment is appropriate where the moving party has established that there is no genuine dispute of material fact and 'the moving party is entitled to judgment as a matter of law.'" *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 266 (3d Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

account as a fee reversal when funds were actually used to purchase flowers or to credit a customer's account that had not been charged any fees were contrary to Wachovia's written policies. Fee refunds may well be an ordinary means of acquiring and keeping customers, but there is no evidence at all that Wachovia condones the falsifying of internal bank records. It is thus apparent that Kremp's actions went far beyond anything that was acceptable to his employer. And if some superiors had advised Kremp how to engage in GL ticket abuse, that would not absolve him of misconduct. Following a suggestion to ignore company policy obviously entails ignoring company policy, which can be predicted to have disciplinary consequences. Indeed, several Wachovia employees who directly or indirectly reported to Kremp were likewise terminated for GL ticket abuse, even though they claimed their actions were taken at Kremp's direction. Kremp's abuse of the GL ticket system was plainly a legitimate, non-discriminatory reason for his termination.

Because Wachovia had a sound basis for firing Kremp, the burden is his to demonstrate that the given reason was a pretext for unlawful age-based discrimination. To satisfy his burden, Kremp must point to some evidence upon which a factfinder could reasonably either disbelieve Wachovia's articulated motive or believe that age-based animus was more likely than not a motivating cause for Wachovia's action. *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). He has not done so.

First, he has offered no basis for disbelieving Wachovia's stated reason for the dismissal. As Kremp himself emphasized, his performance reviews and promotion record show that he was a successful employee until Wachovia discovered his serious

9

misconduct. That misconduct ultimately led to the firing of eight employees, all but one of whom are younger than Kremp. Second, Kremp has failed to provide evidence sufficient for a reasonable factfinder to believe that age-based animus was more likely than not a motivating cause of the employer's actions. Ameen's comments about Kremp's age, assuming they occurred, came many months prior to Kremp's termination and, in light of this record, are insufficient to carry his burden. *Fuentes*, 32 F.3d at 767 ("Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision." (quoting *Ezold v. Wolf, Block, Schorr and Solis-Cohen*, 983 F.2d 509, 545 (3d Cir. 1992))). Further, it was Kirk, not Ameen, who made the ultimate decision to terminate Kremp. While Kremp alleges that Ameen was the decisionmaker in his termination, Kremp fails to provide any evidence to support that allegation. *Celotex*, 477 U.S. at 325 ("When a motion for summary judgment is made … an adverse party may not rest upon the mere allegations or denials of his pleading, but his response … must set forth specific facts showing that there is a genuine issue for trial." (citation omitted)). Additionally, while Ruggiero may have taken over Kremp's responsibilities shortly after his termination, Kremp fails to offer evidence to counter Wachovia's proof that his ultimate replacement is eight years his senior. Finally, evincing the seriousness of Kremp's misconduct, it is undisputed that eight Wachovia employees in total were terminated due to GL ticket abuse. Again, all but one of those former employees are younger than Kremp. Given that evidence, no reasonable factfinder could conclude that Wachovia's articulated non-discriminatory purpose was simply a pretext.

10

## III.   Conclusion

For the foregoing reasons, we will affirm.