**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3453-16T4

HENRY VIERA,

    Plaintiff-Appellant,

v.

NEW JERSEY INSTITUTE OF
TECHNOLOGY,

    Defendant-Respondent,

and

BORIS SHAPIRO,

    Defendant.

_____

Submitted May 7, 2018 — Decided July 18, 2018

Before Judges Accurso and O'Connor.

On appeal from Superior Court of New Jersey,
Law Division, Essex County, Docket No.
L-8382-14.

David H. Kaplan, attorney for appellant.

Jackson Lewis, PC, attorneys for respondent
(Gregory T. Alvarez, of counsel and on the
brief; Jessica L. Sussman, on the brief).

PER CURIAM

Plaintiff Henry Viera appeals from the entry of summary judgment dismissing his complaint against defendant New Jersey Institute of Technology, alleging national origin discrimination, a hostile work environment and retaliation, all in violation of the Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49, stemming from the University's failure to promote him in 2013.  We affirm.

We present the facts in the light most favorable to plaintiff and give him the benefit of all legitimate inferences in support of his claim.  R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).  Plaintiff, born and educated in Peru, was hired by the University in 2001 as an HVAC mechanic in the Physical Plant department.  HVAC mechanics at the University are represented by AFSCME (American Federation of State, County and Municipal Employees).  Plaintiff's position is classified as a range 16 position within the bargaining unit.

In April 2013, the University advertised internally for a control specialist in the Technical Services department, who would, under the direction of the Director of Technical Services, be "responsible for the installation, modification, repair, calibration and overhaul of all control systems installed at NJIT campus facilities."  The position required a Bachelor of Science in mechanical engineering but allowed that

related work experience could be substituted for the degree on a three to one basis. In other words, twelve years of related work experience would qualify one for the position in the absence of a mechanical engineering degree. Control specialists at the University are represented by PSA (Professional Services Association), a different union from the HVAC mechanics. A control specialist is classified as a range 25 position within that bargaining unit.

Plaintiff completed the online application and submitted his resume and cover letter in response to the posting. His application and resume reflected his graduation from high school in Peru and the absence of a mechanical engineering, or indeed, any college degree. Although plaintiff's resume reflected he had been employed by HBC Electric, Inc. for two years prior to his employment by the University, that position was not listed in his online application. Moreover, in his cover letter, plaintiff noted he had "11+ years of experience in the field."

The Director of Technical Services responsible for reviewing the applications did not recommend plaintiff for an interview because he "did not meet requirements." Defendant Boris Shapiro,[1] then Assistant Vice President of Technical

---

[1] Plaintiff voluntarily dismissed his claims against Shapiro, and he is not a party to this appeal.

Services and Construction, asked the Director "to give [plaintiff] a chance," and he was thereafter invited to interview for the position along with three other candidates, two other HVAC mechanics at the University, one white and one Hispanic, and one external candidate, also white. All the candidates were male. Plaintiff had a "good working relationship" with all three members of the Technical Services department who interviewed him and had no concerns going into the interview.

Afterwards, however, he felt they tried to make him "look bad" in the interview in order to have an excuse not to hire him. The interview committee determined plaintiff was not qualified for the job based on his not having twelve years' experience and his poor performance at the interview. They recommended the two white candidates for hire, ranking the outside candidate their first choice. After Shapiro advised him the University had extended an offer to the outside candidate, plaintiff filed a grievance with the assistant vice president in Human Resources.

The grievance form plaintiff signed, states his grievance as follows:

> Henry feels like he was denied a promotion
> even though he has the field experience for
> the job. Henry feels that the job selection

> process violates AFSCME collective
> bargaining agreement Article XVIII(A)[2] also
> NJIT Promotion Policy and NJIT Affirmative
> Action Plan, as well as others.

Although the grievance notes plaintiff's belief the selection process violated the University's affirmative action plan, it did not allege plaintiff was discriminated against because of his national origin. The assistant vice president who took plaintiff's complaint testified at deposition that plaintiff was upset that "friends keep getting hired" and mentioned "Binsky & Snyder," an outside mechanical contracting firm that does business with the University.

The following day, plaintiff and his union representative met with Shapiro for an informal "grievance discussion." Plaintiff's supervisor and a member of the search committee, both of whom testified at deposition that plaintiff was a good HVAC mechanic and a capable employee with good potential, were also in attendance. Shapiro explained to plaintiff the committee concluded he was not qualified for the position because he did not have twelve years' experience, had never designed or been responsible for installation of small HVAC and controls projects and had never supervised or performed

---

[2]  This provision relates to grievance procedures.

installations from engineering or architectural drawings. Shapiro also advised the University's promotion plan was not applicable as it did not apply to positions above range 23 and that plaintiff could not invoke the University's affirmative action policy as he did not meet the qualifications for the position he was seeking. Plaintiff testified at deposition that his union refused to pursue his grievance because the promotion policy in the collective bargaining agreement did not apply to positions outside his bargaining unit.

In response to plaintiff's grievance, the University undertook a review of the selection process, assigning the assistant vice president for Human Resources and the Ethics Liaison Officer to the task. In the course of their investigation, they learned that members of the interview committee had previously worked at Binsky, the firm plaintiff mentioned, and that one of the applicants also currently worked for the company. Although finding no actual conflict, the investigators acknowledged the situation could certainly present an appearance of bias and recommended a new search. They further recommended the new search committee be independent, meaning there should be no past or present relationships between members and applicants or vendors, that interviews be conducted using consistent questions and a uniform evaluation process,

that the position be posted internally and externally to expand the applicant pool and that a member of Human Resources be included on the committee to ensure compliance with acceptable recruitment standards.  Shapiro accepted the recommendations, the offer to the outside candidate was rescinded and the search begun again.

When Shapiro's assistant attempted to schedule an interview for plaintiff with the new committee, however, he declined to be interviewed.  Instead, he sent the following email to Shapiro:

> Dear Mr. Boris Shapiro:
>
> I received a call from [your assistant] today 07/18/2013 to setup an interview with you relating to the control specialist position that I applied for.  I will only be willing to attend a congratulatory interview and not a job interview for the following reasons:
>
> > 1.  I have done two (2) interviews before for this position in which you came to a conclusion that I was not qualified for this position.
> >
> > 2.  I would prefer to have an interview for this position whenever a promotion policy that applies to me and this position is available, since you stated the existing promotional policy doesn't apply to this job position.
> >
> > 3.  You also mentioned in the grievance informal discussion to look for a job in the position in question elsewhere outside of the university.

> Please be informed that a grievance on this matter is already filed with NJIT human resources whom I will inform of your request by a copy of this letter.

After plaintiff declined to participate further in the process, the second search committee re-interviewed the other candidates the first committee interviewed, as well as an additional external candidate who applied in response to the new posting. The new committee recommended the same top two candidates from the first selection process. The new process, however, narrowed the differences between the two candidates, whom the committee awarded "virtually the same" scores. Human Resources recommended that preference should be given to the internal candidate. Shapiro accepted that recommendation and offered the job to the internal candidate in July 2013.

That promotion created an open HVAC mechanic position. As one other HVAC mechanic position was also open, Shapiro requested and obtained approval to eliminate both and create another control specialist position, and to hire from the list of the recruitment just completed. Based on the results of that recruitment, Shapiro offered the second position to the top-ranking external candidate, who accepted in August 2013.

Following discovery, the University moved for summary judgment based on those undisputed facts. Plaintiff opposed,

arguing he was equally or better qualified than the two white men hired, that he never withdrew his candidacy, that the University never informed him a second search committee was formed in response to his grievance, that the University retaliated against him by cutting his overtime and created a hostile environment by forcing him to work for a department head who had repeatedly discriminated against him. He claimed disputes of fact as to the University's motivation for the hires precluded summary judgment.

The trial judge disagreed, finding plaintiff, by refusing to re-interview, could not establish a prima facie case of employment discrimination. The judge also concluded plaintiff required expert testimony, which he did not present, to establish he was qualified for the position. Finally, the judge concluded plaintiff could not establish a retaliation claim because he could not establish his grievance was based on protected activity, and he presented no proof of a hostile environment. Plaintiff appeals, reprising the arguments he made to the trial court and adding that the court failed to accord him all favorable inferences from the facts.

We review summary judgment using the same standard that governs the trial court. Murray v. Plainfield Rescue Squad, 210 N.J. 581, 584 (2012). Thus, we consider "whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Liberty Surplus Ins. Corp., Inc. v. Nowell Amoroso, PA, 189 N.J. 436, 445-46 (2007) (quoting Brill, supra, 142 N.J. at 536). In considering application of the LAD to the facts adduced on the motion, our review is de novo without deference to any interpretive conclusions we believe mistaken. Nicholas v. Mynster, 213 N.J. 463, 478 (2013); Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Our courts review claims of discrimination under the LAD using the familiar burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). In a suit alleging unlawful discrimination for failure to promote under the LAD, a plaintiff's prima facie case consists of demonstrating that: (1) he "is a member of a class protected by the anti-discrimination law"; (2) he "was qualified for the position or rank sought"; (3) he "was denied promotion"; and (4) others "with similar or lesser qualifications achieved the rank or position." Dixon v. Rutgers, 110 N.J. 432, 443 (1988).

Once the plaintiff establishes his prima facie case, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for the plaintiff's rejection. Peper v. Princeton Univ. Bd. of Trs., 77 N.J. 55, 83

10                                                                    A-3453-16T4

(1978). If the employer does so, thus overcoming the presumption of an unlawful motivation, the burden shifts back to the plaintiff to prove the employer's proffered reason for the termination was merely a pretext for discrimination. See Bergen Commercial Bank v. Sisler, 157 N.J. 188, 211 (1999). "Although the burden of production shifts throughout the process, the employee at all phases retains the burden of proof that the adverse employment action was caused by purposeful or intentional discrimination." Ibid.

We agree with the trial court that plaintiff's prima facie case foundered on the second prong, i.e. that he was qualified for a promotion he sought. Although we are not inclined to concur that plaintiff needed an expert to establish he was qualified for the position, see Zive v. Stanley Roberts, Inc., 182 N.J. 436, 448 (2005) (explaining the "slight evidentiary burden" borne by the plaintiff in establishing a prima facie case "evaluated solely on the basis of the evidence presented by the plaintiff, irrespective of defendants' efforts to dispute that evidence"), that disagreement is of no moment because no reasonable jury could find plaintiff continued to seek the control specialist position after he declined to participate in the new search. Plaintiff's email to Shapiro that he would "only be willing to attend a congratulatory interview and not a

11

job interview" established that fact beyond any doubt. Because plaintiff cannot establish he continued to seek the promotion when the University reconstituted the search committee and began the search anew, he cannot establish a prima facie case of discrimination.

But even were it possible to find that plaintiff remained willing to compete for the position, and thus that he established a prima facie case, we could not find the trial court erred in entering summary judgment on this record. In addition to arguing that plaintiff withdrew his application for the control specialist job, the University claimed he lacked the requisite twelve years' experience and the two applicants selected were better qualified, satisfying its burden to articulate a legitimate, non-discriminatory reason for not promoting plaintiff. Although plaintiff certainly disputed that, he failed to produce any evidence on the motion that those reasons were a pretext for invidious discrimination based on his nationality.

In order to prove pretext in a promotional context, it is not enough for a plaintiff to simply show he was as good or better than the employees chosen in his stead, the focus of plaintiff's proofs on the motion. He "must also demonstrate that the employer was motivated by discriminatory intent." Zive, 182

12

N.J. at 449. Plaintiff's failure to evince even a shred of evidence that the University acted out of discriminatory animus doomed his case on summary judgment. See Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 600 (1988).

Plaintiff's claims of retaliation and hostile work environment suffered from similar insufficiencies of proof. A plaintiff's prima facie case for retaliation is similar but not identical to one for discriminatory failure to promote. A plaintiff alleging he was subject to retaliation in the workplace must demonstrate: (1) that he "engaged in protected activity"; (2) the activity was "known to the employer"; (3) he suffered "an adverse employment decision"; and (4) there existed "a causal link between the protected activity and the adverse employment action." Battaglia v. United Parcel Serv., Inc., 214 N.J. 518, 547 (2013) (quoting Woods-Pirozzi v. Nabisco Foods, 290 N.J. Super. 252, 274 (App. Div. 1996)).

Plaintiff claimed that after he filed his grievance he was denied overtime in retaliation for his complaint of discrimination. We agree with the trial court that plaintiff failed to establish a prima facie case of retaliation because his grievance did not allege discrimination on the basis of nationality. Accordingly, he could not establish that he was

13

engaged in protected activity known to the employer. See Battaglia, 214 N.J. at 547.

Even assuming for sake of argument that plaintiff's grievance alleged discrimination based on national origin, thereby establishing the first two prongs of his necessary proofs, he produced absolutely no evidence on the motion from which a fact-finder could infer a causal link between his grievance and the curtailment of his overtime hours. Plaintiff conceded he actually made more money in overtime in the two years after he filed the grievance than before. He also admitted the University did not single him out but instead cut overtime for the entire Physical Plant department.

Because plaintiff failed to establish the University did not promote him on the basis of his nationality or that it retaliated against him after he complained, he likewise could not establish that his continued supervision by individuals who had discriminated against him constituted a hostile environment. See Cutler v. Dorn, 196 N.J. 419, 431 (2008) (quoting Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 606 (1993)) ("When evaluating whether conduct is sufficiently severe or pervasive to create a hostile work environment, we focus on the "harassing conduct . . ., not its effect on the plaintiff or the work environment."). We accordingly agree with the trial judge that

14                                                          A-3453-16T4

plaintiff's remaining claim for punitive damages, likewise premised on his unsupported belief that the University failed to promote him based on his national origin, was properly dismissed. Plaintiff's arguments to the contrary are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION