**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3743-17T4

CONSTANTINE ZOIS,

    Plaintiff-Appellant,

v.

KEAN UNIVERSITY,

    Defendant-Respondent.

_____

Argued December 4, 2019 – Decided January 6, 2020

Before Judges Koblitz, Whipple and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-2741-15.

Robert B. Spawn, Jr. argued the cause for appellant (Kozyra & Hartz, LLC, attorneys; Barry A. Kozyra, of counsel and on the brief; Robert B. Spawn, Jr., on the brief).

Timothy P. O'Brien, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Timothy P. O'Brien, on the brief).

PER CURIAM

Plaintiff Constantine Zois appeals from a March 12, 2018 order granting summary judgment to Kean University in an age discrimination claim brought under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -42 (LAD). We affirm.

In 2014, plaintiff, then a seventy-six-year-old tenured science professor at the University, was reassigned from teaching duties to professional development to learn the necessary technology for his job. A few days later, plaintiff took medical leave and did not return to his position. He retired in 2017.

The trial court correctly concluded that plaintiff did not establish a prima facie case of age discrimination. The University also came forth with a legitimate, non-discriminatory reason for the reassignment that was not a pretext for discrimination.

I. Plaintiff's Employment with Kean University.

Plaintiff taught in the School of Environmental and Sustainability Sciences (SESS), in the College of Natural, Applied, & Health Sciences (College) at the University, until his retirement on July 1, 2017. Dr. Paul Croft, the Executive Director of the SESS, was plaintiff's supervisor from July 1, 2013,

2

to June 30, 2015.  Dr. George Chang was the Dean of the College.  Dr. Jeffrey Toney was the Provost of the University.

The University expects its professors to be able to use basic technology, such as a computer, Microsoft Word, and email, as well as "KeanWISE," the University's electronic information system, to update their syllabi and course descriptions, enter students' grades, and post office hours.  These expectations were acknowledged and confirmed by Jacqueline Keil, a Kean professor and chair of the grievance committee of the Kean Federation of Teachers, the local union.

The union agreement requires that "[d]uring the period of instruction, faculty shall be present on campus as necessary to their professional responsibilities and shall also be accessible to students, faculty, and staff colleagues through whatever normal electronic, telephonic or written modes they find most convenient during the academic year."  Professor Keil explained that based on her understanding, the method of communication must be what is "most convenient for students and colleagues, convenient for everyone."

In April 2010, Dr. Toney advised plaintiff in a letter that he found "deficiencies in [plaintiff's] teaching, service and scholarship."  He said: "[T]here is no evidence of use of technology in the classroom – particularly

important for teaching students about current methods and practices in meteorology." He recommended that plaintiff "participate in workshops on technology in the classroom, such as those offered on campus by the Center for Professional Development."

In October 2011, plaintiff was notified that his failure to upload a faculty activity report was documented by the University. In February 2012, plaintiff was notified that his failure to update his office hours was also documented, and could be considered for "possible future action." On July 1, 2013, when Dr. Croft emailed professors in the SESS asking for their updated curricula vitae, Dr. Croft received an automated reply from plaintiff's email stating: "Unless I've specifically arranged an email with you, I am unable to reply back by email."

On July 8, 2013, Dr. Croft sent a letter to plaintiff saying it appeared plaintiff's email "may be inactive in that the automatic reply suggests that [his] office computer (or at home) is inoperative or that [he] may be having technical issues in accessing [his] account." Dr. Croft noted "the heavy reliance of university business (including student interactions) on email and other forms of electronic and online communication." Dr. Croft recommended that plaintiff take "specific steps to resolve any" issues, such as attending necessary training, and "routinely access[ing] [his] email/other accounts and [replying] as needed

to messages from [the University] students, faculty, staff, administrations, and other offices." Dr. Croft said: "The expectation is that all faculty are (or will be) up-to-speed prior to the upcoming academic year and advanced before the end of this calendar year."

Subsequently, Dr. Croft, Dean Chang, and plaintiff met to discuss the University's expectations and plaintiff's needs regarding technology training. On July 31, 2013, after the meeting, Dr. Croft sent an email confirming that plaintiff would "coordinate with [another University professional] as to 'training' on the use of email" on his office computer because plaintiff "indicated [he was] most comfortable with this option." Dr. Croft also asked plaintiff to work with administrative personnel to obtain a larger monitor for his office and, if available, an updated computer.

On August 3, 2013, plaintiff sent a handwritten note to Dr. Croft in which he asked that Dr. Croft "communicate with [him] by campus mail, telephone or in person" because the computer in his office is "small, very slow and outdated." Plaintiff also indicated that the screen was "blurred." Dr. Croft responded to plaintiff's letter, informing him that the replacement of his computer was still in progress and noting that email and computer use "is part of the landscape of higher education and our work here at Kean University." Dr. Croft continued:

5

> Therefore[,] it is imperative that you receive training and have updated equipment (with a larger screen that you may see clearly) as soon as possible for the use of email and/or other computer-based applications relevant to the classroom. It is very important that we provide our students with quality education and instruction and be able to communicate with them in the digital era.

On September 13, 2013, plaintiff received an updated monitor screen and did not comment that he could not see the screen thereafter.

The following week, University staff emailed plaintiff to inform him that he could arrange his training sessions with Karen Harris, an employee in the office of Professional Development. In response, they received an automatic email that read: "Thank you for your email! So that I can further assist you, please feel free to leave me a voicemail . . . ."

At the beginning of October 2013, Dr. Toney wrote to plaintiff, informing him that his failure to update his office hours using KeanWISE was documented and could be considered for "possible future action." The following month, Dr. Croft emailed plaintiff to ask him to follow-up with Dean Chang regarding his "progress on email and other electronic access." Plaintiff responded that he "had two training sessions with Karen Harris at the Center for Professional Development" and he would "continue as needed." He further stated: "Under

6

these circumstances I do not need to meet with the Dean. I am not a two[-]year[-]old idiot."[1]

On January 13, 2014, an administrative assistant emailed Dr. Croft asking him to contact plaintiff to remind him to post his office hours on KeanWISE. The following day, Dean Chang sent plaintiff a letter regarding his failure to submit his students' grades for the Fall 2013 semester by the specified date. Dean Chang also stated that there were "[m]any unsuccessful attempts to reach [plaintiff] via email and phone."

On June 25, 2014, Dr. Croft received an email from one of plaintiff's students who explained that she was unable to contact him via email or phone to discuss a grade. Several other students also complained that plaintiff never responded to their emails.

At the end of the 2013-2014 academic year, on June 31, 2014, Dean Chang formally recommended to Dr. Toney that plaintiff be temporarily reassigned to non-teaching duties for professional development training. Dean Chang explained that "[u]pon satisfactory completion of the focused professional development training, [plaintiff] may be reassigned to classroom duties if that

---

[1] The University contends that during the 2013-2014 academic year, plaintiff attended only one training session with Karen Harris, on October 29, 2013.

is warranted." According to the terms of the union contract between the University and faculty, the "[a]ssignment of non-teaching duties . . . for any faculty member, for any purpose" is reserved to the University's academic managerial judgment.

On August 22, 2014, Dr. Toney informed plaintiff that he was being "reassigned to professional development and non-teaching assignments for the Fall 2014 semester" so that he could "improv[e] his technology use . . . to [better] serve students."

The following week, plaintiff and a union representative met with Dr. Toney and Dean Chang to discuss the reassignment. Plaintiff agreed that he would participate in training for his professional development during the Fall 2014 semester. Plaintiff was advised that he needed to be able to type as well as use KeanWISE and email. After the meeting, the union representative believed the matter was resolved and plaintiff would return to the classroom after completing his training.

Professor Keil confirmed that a reassignment is not considered a suspension under the union contract. A suspension is a disciplinary action wherein the faculty member does not report for any duties and does not receive a salary, whereas a reassignment is shifting hours from teaching to different

duties. During plaintiff's reassignment to non-teaching duties, he retained his title, his full salary, and benefits.

Plaintiff received his professional development training schedule from Dean Chang at the beginning of September 2014. When he received his schedule, plaintiff informed Dean Chang of his intent to take sick time for the remaining part of the day and to meet with the human resources department to determine his retirement options. Dean Chang informed plaintiff that several of his colleagues were "happily retired" and received "a good sendoff." Plaintiff said Dean Chang told him he would be "glad to see that [plaintiff] get a nice retirement party."

On September 4, 2014, plaintiff took a medical leave of absence and did not return to work until January 20, 2015. Plaintiff met with Dean Chang's assistant on January 20, 2015 and was advised that he could return to teaching during the Fall 2015 semester after learning "how to use email, prepare syllabi in [Microsoft] Word, and . . . the fundamentals of how to use the computer." At that time, plaintiff "indicated that he may use his sick leave and retire after [the Spring 2015] semester." At the end of January 2015, plaintiff took a medical leave of absence from which he did not return. He retired effective July 1, 2017.

 A-3743-17T4

The trial court found that plaintiff was "unable to establish a prima facie case of age discrimination against [the University]." The court found that "[p]laintiff failed to meet the legitimate expectations of [the University], and that [p]laintiff did not receive an adverse employment action."

## II. Legal Standard.

The standard of review for a grant of summary judgment is de novo. Conley v. Guerrero, 228 N.J. 339, 346 (2017). "[S]ummary judgment will be granted if there is no genuine issue of material fact and 'the moving party is entitled to a judgment or order as a matter of law.'" Ibid. (quoting Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016)). In reviewing a grant of summary judgment, appellate courts consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 536 (1995) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 251-52 (1986)).

"[C]onclusory and self-serving assertions by one of the parties are insufficient to overcome [a summary judgment] motion." Puder v. Buechel, 183 N.J. 428, 440-41 (2005). "[W]here the party opposing summary judgment points only to disputed issues of fact that are 'of an insubstantial nature,' the proper

disposition is summary judgment." Brill, 142 N.J. at 529 (quoting Judson v. Peoples Bank & Trust Co., 17 N.J. 67, 75 (1954)). "Competent opposition requires 'competent evidential material' beyond mere 'speculation' and 'fanciful arguments.'" Hoffman v. Asseenontv.com, Inc., 404 N.J. Super. 415, 426 (App. Div. 2009) (quoting Merchs. Express Money Order Co. v. Sun Nat'l Bank, 374 N.J. Super. 556, 563 (App. Div. 2005)).

According to the LAD:

> It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination . . . [f]or an employer, because of the . . . age . . . of any individual . . . to discharge . . . or to discriminate against such individual in compensation or in terms, conditions or privileges of employment . . . .
>
> [N.J.S.A. 10:5-12(a).]

"In a case alleging age discrimination under the LAD, an employee must 'show that the prohibited consideration[, age,] played a role in the decision making process and that it had a determinative influence on the outcome of that process.'" Bergen Commercial Bank v. Sisler, 157 N.J. 188, 207 (1999) (alterations in original) (quoting Maiorino v. Schering-Plough Corp., 302 N.J. Super. 323, 344 (App. Div. 1997)).

"The evidentiary burden at the prima facie stage is 'rather modest: it is to demonstrate to the court that plaintiff's factual scenario is compatible with

discriminatory intent—i.e., that discrimination <u>could</u> be a reason for the employer's action.'" <u>Zive v. Stanley Roberts, Inc.</u>, 182 N.J. 436, 447 (2005) (quoting <u>Marzano v. Comput. Sci. Corp. Inc.</u>, 91 F.3d 497, 508 (3rd Cir. 1996)).

For summary judgment purposes, a plaintiff satisfies this element "so long as the employee shows that he has been performing in the position." <u>Id.</u> at 441; <u>Grande v. Saint Clare's Health Sys.</u>, 203 N.J. 1, 18 (2017). In addressing how courts should evaluate this requirement of the prima facie case, our Supreme Court has stated that

> only the plaintiff's evidence should be considered. That evidence can come from records documenting the plaintiff's longevity in the position at issue or from testimony from the plaintiff or others . . . . Because performance markers like poor evaluations are more properly debated in the second and third stages of the burden-shifting test, they do not come into play as part of the second prong of the prima facie case. Thus, even if a plaintiff candidly acknowledges, on his own case, that some performance issues have arisen, so long as he adduces evidence that he has, in fact, performed in the position . . . the slight burden of the second prong is satisfied.
>
> [<u>Zive</u>, 182 N.J. at 455 (citation omitted).]

The LAD does not define "adverse employment action." <u>See</u> N.J.S.A. 10:5-5. "The proofs necessary to demonstrate an 'adverse employment action' must be examined on a case-by-case basis." <u>Victor v. State</u>, 401 N.J. Super.

596, 615 (App. Div. 2008), modified, 203 N.J. 383 (2010). Adverse employment actions include "actions that affect wages, benefits, or result in direct economic harm." Id. at 616. A noneconomic action will also qualify as an adverse employment action when it "cause[s] a significant, non-temporary adverse change in employment status or the terms and conditions of employment." Ibid. However, "an employer's adverse employment action must rise above something that makes an employee unhappy, resentful or otherwise cause an incidental workplace dissatisfaction." Ibid.

## III. No Prima Facie Case.

Plaintiff contends that the trial court improperly determined that he did not meet the University's legitimate expectations. He claims that a reasonable jury could conclude that plaintiff suffered an adverse employment action, and points out that a younger professor was hired to replace him. The appropriate inquiry is whether plaintiff was treated differently from others not within the protected class. See El-Sioufi v. St. Peter's Univ. Hosp., 382 N.J. Super. 145, 167 (App. Div. 2005).

New Jersey courts utilize the framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) when a plaintiff attempts to "prove

an employer's discriminatory intent through circumstantial evidence." Bergen Commercial Bank, 157 N.J. at 209.

> The elements comprising the traditional formulation of the prima facie case for discrimination are that: (1) plaintiff belongs to a protected class; (2) [he or] she was performing her job at a level that met her employer's legitimate expectations; (3) [he or] she suffered an adverse employment action; and (4) others not within the protected class did not suffer similar adverse employment actions.
>
> [El-Sioufi, 382 N.J. Super. at 167.]

The parties do not dispute the first element that plaintiff belongs to a protected class. Plaintiff was seventy-six at the time of his reassignment. Although he lacked technology skills, because plaintiff "performed in [his] position" by teaching his classes and having an automatic email reply that directed senders to call his office, plaintiff may well have met the second prong of the prima facie case.

Importantly, however, the trial court properly concluded that plaintiff did not suffer an adverse employment action. Plaintiff's temporary reassignment was not an adverse economic action because his salary remained the same and he kept his benefits. See Victor, 401 N.J. Super. at 615-16. The reassignment also was not an adverse non-economic action because it was not "a significant, non-temporary adverse change in employment status." Ibid. The reassignment

14

was temporary, and plaintiff would have been returned to teaching duties had he attended the technology course and not used medical leave and then retired.

The University's actions made plaintiff "unhappy, resentful [and] otherwise cause[d] an incidental workplace dissatisfaction," as evidenced by plaintiff informing Dean Chang that he was not "a two year old idiot." See Victor, 401 N.J. Super. at 616. Plaintiff's displeasure alone does not constitute an adverse employment action as required by the third element. See ibid. Regarding the final element of the prima facie case, plaintiff failed to produce any evidence to suggest that other professors were not held to the same technology standard. Thus, plaintiff failed to produce evidence of the last two elements of a prima facie case: an adverse employment action and unequal treatment.

IV. The University's Legitimate, Non-discriminatory Reason.

Although it is plaintiff's burden to demonstrate a prima facie case before the University is required to respond with a non-discriminatory reason for the treatment, in the interest of completeness, we briefly discuss the University's reason for requiring a modest level of technology usage. Professors utilize KeanWISE to update their syllabi, input student grades, and update office hours.

Professors are also reasonably expected to be able to satisfactorily communicate with students.

Plaintiff began to receive notice of his deficiency in the use of technology as early as April 2010. Dr. Toney advised plaintiff that he should participate in workshops to improve his ability to utilize basic technology. When plaintiff did not update his office hours or student grades, plaintiff was notified that he was required to utilize KeanWISE to do so. Additionally, Dean Chang and Dr. Croft initially recommended that plaintiff spend time with the Office of Professional Development for assistance. Only when this failed to yield results did they temporarily reassign plaintiff to focus on professional development, as permitted by the union agreement. The University articulated "a legitimate, non-discriminatory reason" for plaintiff's reassignment. Bergen Commercial Bank, 157 N.J. at 210.

Plaintiff failed to demonstrate a prima facie case of age discrimination and summary judgment was properly granted.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3743-17T4